In re ST. JOHN'S NURSING HOME, INC., d/b/a Blaire House Long Term Care Facility of New Bedford, f/k/a Casa Seville, Debtor.

Bankruptcy No. 81–02346–JNF.

United States Bankruptcy Court, D. Massachusetts.

May 12, 1993.

Mark N. Polebaum, Boston, MA, for Chapter 11 Trustee/Movant.

Burton Peltz, Boston, MA, for City of New Bedford, Respondent.

## MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

### I. INTRODUCTION

The matter before the Court is the "Trustee's Motion Pursuant to 11 U.S.C. § 505 to Reassess the Value of the Subject Property, Determine Its Real Estate Tax Liability and to Order a Refund of Any Overpayment of Such Taxes" (the "Motion"). William Gabovitch, the Chapter 11 Trustee (the "Trustee") of the above-referenced Debtor filed the Motion (the "Motion") on November 13, 1992. He asserts that the Debtor's real estate was assessed improperly and over-valued by the City of New Bedford ("the City") for the fiscal years 1988 through 1993. Accordingly, he asks the Court to determine the Debtor's real estate liability to the City for fiscal years 1988, 1989, 1990, 1991, 1992, and 1993 and to order the City to refund any overpayments.

The City timely filed an objection to the Motion. It asserts that this Court is prohibited from determining the Debtor's tax liability and ordering a refund under 11 U.S.C. § 505(a)(2)(B)(i).

The parties are in agreement as to all relevant facts and have submitted briefs and reply briefs. Based upon the undisputed facts, the Court makes the following findings of fact and rulings of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

### II. FINDINGS OF FACT

The Debtor filed a voluntary Chapter 11 petition on December 31, 1981 and operated as a debtor-in-possession until the Trustee was appointed on June 6, 1990. The Debtor is in the business of owning and operating a 123 bed nursing home under license from the Commonwealth of Massachusetts.

The Debtor's real estate consists of land and a building located at 397 County Street, New Bedford. The Debtor is subject to the assessment of local property taxes by the City. The Debtor pays real estate taxes from its operating income. Local real property taxes are assessed under Mass.Gen. Laws Ann. Ch. 59, §§ 1–94 (West 1988 & Supp.1992). The actual tax is based upon the assessor's determination of the fair market value of the subject property. *Id.* at §§ 11 and 38.

The City assessed the Debtor's property using the following assessments and rates:

|  | Assessment | Tax Rate | Tax |
|---|---|---|---|
| Fiscal Year 1988 | 1,767,300 | 35.99 | 63,605.13 |
| Fiscal Year 1989 | 2,644,500 | 20.55 | 54,344.18 |
| Fiscal Year 1990 | 2,644,500 | 20.79 | 54,979.15 |
| Fiscal Year 1991 | 2,644,500 | 20.57 | 54,397.37 |
| Fiscal Year 1992 | 2,709,800 | 22.69 | 61,485.36 |

The Trustee asserts that when the property is assessed properly the total tax obligations for the five fiscal years at issue would be $122,254.19 less than what the Debtor and the Trustee have paid, since, with the exception of fiscal year 1993, all real estate taxes have been paid in full.

Neither the Debtor nor the Trustee filed an application for an abatement with the City for any of the fiscal years in question. Moreover, neither the Debtor nor the Trustee took an appeal to or filed a petition with the Appellate Tax Board pursuant to Mass.Gen.Laws Ch. 59, §§ 59 or 64. The City filed a proof of claim with this Court on March 17, 1982 for prepetition unpaid real estate taxes and water charges. Its claim totals $38,520.61. A duplicate proof of claim was filed in March of 1992.

### III. ARGUMENTS OF THE PARTIES

The Trustee contends that section 505 of

the Bankruptcy Code [1] gives this Court the power and authority to determine the Debtor's real estate tax liabilities for fiscal year 1988 through 1992 and to order a refund of any overpayments as a result of the Court's valuation of the Debtor's property for those fiscal years, as well as the power to determine the assessment for 1993. The Trustee asserts that the time limitations set forth in section 505(a)(2)(B) should be construed merely to raise a time limitation on the Court's ability to act on a refund claim. In other words, the Trustee contends that section 505(a)(2)(B) does not control whether a claim for a refund can be brought but only where it can be brought. Finally, the Trustee requests that the Court use an income approach to valuation to determine the fair market value of the nursing home property and accept his calculation of refunds owed.

The City contends that this Court lacks jurisdiction to determine the Trustee's motion because the real estate tax bills for 1988 through 1992 were fully paid and no abatement applications or appeals were filed. The City argues that section 502(a)(2)(B) prohibits the Court from determining the Debtor's postpetition real estate taxes because neither the Debtor nor the Trustee made a proper request to the City for a tax refund. With respect to the 1993 taxes, the City asserts that a determination by this Court of taxes due for fiscal year 1993 is premature.

The City's argument that this Court cannot adjudicate the amount of the Debtor's tax obligation is grounded in the seemingly plain language of section 505(a)(2)(B). The City contends that the statute bars the Court from determining the amount taxed prior to 120 days after a trustee properly requests the refund. The City argues that under Massachusetts law the timely filing of an abatement application is a prerequisite to seeking a refund of an overpayment of taxes. Indeed, the City asserts that "the entire statutory abatement scheme is, in and of itself, if the taxes have been paid, a scheme for ultimately obtaining a refund." The City adds "[c]ertainly, no taxpayer files an abatement just to obtain a certificate showing that the amount of his taxes has been reduced. What the taxpayer ultimately wants in such a situation is a *refund* of the overpayment which he has made." (emphasis in original). Thus, according to the City, since the Trustee never made a proper request for a refund, the Court is prohibited from determining the tax.

Both parties address *In re Ledgemere Land Corp.*, 135 B.R. 193 (Bankr.D.Mass. 1991) (hereinafter *Ledgemere*). The Trustee argues that the court in that case correctly determined the scope of section 505. The City submits that the *Ledgemere* court ignored the plain meaning of section 505(a)(2)(B), and failed to recognize the statutory refund scheme under Massachusetts law. It also submits that *Ledgemere* is distinguishable from the present case.

## IV. DISCUSSION

### A. Issues

The issues that must be resolved include 1) whether this Court has the power to determine the amount owed by the Debtor for real estate taxes for years 1988 through 1993 by reassessing the value of the Debtor's property for those years; and 2) whether the Debtor has the right to a

---

1. Section 505 provides in pertinent part:
   (a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.
   (2) The court may not so determine—
   (A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title; or
   (B) any right of the estate to a tax refund, before the earlier of—
   (i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or
   (ii) a determination by such governmental unit of such request.
   11 U.S.C. § 505.

refund of taxes previously paid, and, if so, what the amount of the refund should be. If the Court determines that it lacks the power to require the City to refund overpayments, valuation of the Debtor's property obviously would be futile.

Section 505(a)(1) sets forth the general rule that the bankruptcy court has jurisdiction to determine the amount of any tax, whether or not the tax has been paid and whether or not the dispute is before another court or agency. However, section 505(a)(2) sets forth two limitations upon this power. First subsection 505(a)(2)(A) provides that the court may not determine the amount of a tax if the amount was contested and adjudicated by another court or administrate tribunal of competent jurisdiction. Secondly, subsection 505(a)(2)(B) divests the bankruptcy court of authority to determine the estate's right to a tax refund before the earlier of 120 days after the trustee properly files a tax refund claim, or a determination by the taxing authority denying the tax refund claim.

■ Section 505(a)(2)(B) deals with the right of the estate to a refund. It is a limitation on the court's power to determine the estate's entitlement to a tax refund. According to the legislative history, its purpose is to ensure that an estate's request for a tax refund did not languish in the administrative process. Thus, if the responsible administrative agency does not determine the estate's request for refund within 120 days, the bankruptcy court may determine the estate's rights. Section 505(a)(2)(B) prohibits the bankruptcy court from adjudicating the right of an estate to a tax refund unless the trustee has first requested a refund from the government authority administering the tax and was refused. *In re Goldblatt Bros., Inc.,* 106 B.R. 522 (Bankr.N.D.Ill.1989).

The issues raised by the parties and the interplay of the subsections of section 505 in the context of this case present something of a conundrum. The prohibition set forth in section 505(a)(2)(A) does not apply to the present case because the taxes in dispute did not arise before the commencement of the case and consequently could not have been adjudicated by a judicial or administrative tribunal of competent jurisdiction before that time. All of the disputed tax assessments arose during the pendency of this Chapter 11 case. Clearly, but for section 505(a)(2)(B), the Court has both the power and the discretion to determine the *amount* of the taxes since the exception noted in section 505(a)(2)(A) is inapplicable (there having been no prepetition adjudication of the amount of the taxes). However, a decision to make such a determination would be meaningless in this case, at this time if section 505(a)(2)(B) bars, either temporarily or permanently, the Trustee from seeking a *refund,* since the taxes for fiscal years 1988 through 1992 have been paid.

### B. *In re Ledgemere Land Corp.*

In this jurisdiction, Chief Judge Queenan has held that a debtor has the power under section 505 to seek both a reduction of real estate taxes and a refund of taxes that had been paid with respect to two prepetition tax years and one postpetition tax year. Three types of taxes were involved in the *Ledgemere* case: 1) taxes for which abatement applications had not been filed; 2) taxes for which abatement applications had been filed; and 3) tax payments for which refunds were sought. *Ledgemere,* 135 B.R. at 195–98. Judge Queenan interpreted section 505 to bar the bankruptcy court only from resolving tax issues "contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction." *Id.* at 195. He analogized a debtor's failure to contest a real estate tax assessment within the period or in the manner prescribed under state law to a default judgment against a debtor in a civil action that would be binding in bankruptcy. However, he stated: "Congress has nevertheless concluded that tax claims merit special treatment. The broad grant of jurisdiction contained in § 505 makes no reference to time periods imposed by state law." *Id.* at 196. Relying upon the prior Bankruptcy Act, he determined that the rationale for such an interpretation is "... to prevent creditors from being prejudiced by

a debtor's failure to contest assessed taxes." *Id.*

The *Ledgemere* court also found support in a decision interpreting section 2a (2A) of the former Bankruptcy Act by former Judge Glennon of this district. Judge Glennon ruled that exhaustion of administrative remedies under state law was not a prerequisite to a challenge in the bankruptcy court. *See In re New England High Carbon Wire Corp.,* 39 B.R. 886 (Bankr. D.Mass.1984). In that case, a town filed a proof of claim for taxes owed for three fiscal years. The debtor objected to the proofs of claim on the ground that the assessed values were not accurate. The debtor also requested that the bankruptcy court determine the property values and amount of taxes which the debtor was obligated to pay. The town argued that since the Debtor did not apply for an abatement under Mass.Gen.Laws Ch. 59, § 59 before challenging the taxes in bankruptcy court, the bankruptcy court had no jurisdiction. The court ruled that it had power to determine unpaid taxes which were not contested prior to the commencement of the bankruptcy case. However, in *dicta,* the court stated that it could not hear a dispute respecting taxes if the tax had been paid or had been contested before an administrative tribunal. 39 B.R. at 889.

With respect to taxes for which abatement applications had been filed, the *Ledgemere* court determined that since boards of assessors are not authorized to hold hearings they are not "judicial or administrative tribunals." Thus, according to the *Ledgemere* court, for the taxes to be "contested before and adjudicated by" a judicial or administrative tribunal, a hearing must take place before the Massachusetts Appellate Tax Board or a county commission. *Id.* 135 B.R. at 197.

With respect to the debtor's claim for a refund of certain taxes that had been paid, the *Ledgemere* court rejected the taxing authority's argument that the refund claim was premature due to the debtor's failure to follow section 505(a)(2)(B) for two reasons. First, the court stated that a refund claim did not need to be made where the refund is sought as a setoff or counterclaim against the claim of the taxing authority for unpaid taxes. *Id.* at 198, *citing* 124 Cong.Rec. H. 11110–11 (daily ed. Sept. 28, 1978), S.17426–28 (daily ed. Oct. 6, 1978) (remarks of Rep. Edwards and Sen. DeConcini). Secondly, Judge Queenan found there was no separate administrative procedure in Massachusetts for the refund of local taxes, and that the only way under Massachusetts law to contest real estate taxes was to file an application for an abatement, which does not require payment of the tax by the taxpayer contesting an assessment. *Id.* at 198. Despite the facts that the debtors did not seek an abatement for all tax years and properties for which they sought a refund and the time for seeking an abatement or an appeal had long passed, the court held that section 505 gave it the power to adjudicate the estate's taxes. In short, Judge Queen did not construe the provisions of Mass.Gen.Laws Ch. 59 as creating an administrative procedure for obtaining a refund of local taxes that have been paid.

Chief Judge Queenan rejected the contrary decision of *In re Qual Krom South, Inc.,* 119 B.R. 327 (Bankr.S.D.Fla.1990). The *Qual* case involved a Chapter 11 debtor who contended that the Internal Revenue Service had been overpaid and had misapplied credits. The Florida court determined that the statute of limitations imposed by 26 U.S.C. § 6511 had run prepetition and that section 505 could not be used to revive the debtor's refund claim. Judge Queenan stated the following reasons for rejecting the *Qual* decision:

> The *Qual* decision ignores the statute's broad jurisdictional grant to determine taxes "whether paid or not paid" and the statute's failure to refer to any procedure or time limit other than the 120 day refund procedure. The *Qual* decision also does not take into account the goal of § 505 of preventing prejudice to creditors by reason of the debtor's default. Furthermore, the court's reliance upon the statute's reference to a court or tribunal "of competent jurisdiction" is particularly unpersuasive. Another decision in the same district, *In re Palm Beach*

*Resort Properties, Inc.,* 51 B.R. 363 (Bankr.S.D.Fla.1985), adopts the better position—that § 505 gives the bankruptcy court jurisdiction to adjudicate taxes which were not seasonably contested.

*Ledgemere,* 135 B.R. at 198.

### C. Case Law

Recent decisions have recognized the bankruptcy court's power to reassess real property belonging to debtors and lower the debtor's real estate tax obligations retroactively. In *In re AWB Associates, G.P.,* 144 B.R. 270 (Bankr.E.D.Pa.1992), the court ruled that it was not precluded from exercising jurisdiction over a debtor's request that the court value its property for purposes of assessment. The debtor had paid, prior to the filing, real estate taxes to the City of Camden. The court determined that it was not precluded from making the assessment even though the debtor failed, prior to the filing, to meet state law procedural requirements and the lapse of time between the earliest tax year in issue and the time of the filing exceeded five years. The court stated: "We agree with all of the other authority on this point, which concludes that procedural requirements are pre-empted by the Bankruptcy Code ... it is this very failure to invoke state-court procedures which *allows* the bankruptcy court to determine the matter...." 144 B.R. at 278. Notably, the court did not mention section 505(a)(2)(B).

In *In re Warren Street Associates, Ltd. Partnership,* 143 B.R. 326 (Bankr. N.D.N.Y.1992), the debtor sought an order reducing a city's real estate tax assessments for four prepetition years. The debtor had not paid any of the assessed taxes and had not filed a grievance, appeal, or state court action challenging the city's assessment, essentially defaulting under state law. Following *Ledgemere,* the court ruled that because the debtor's tax liability was not contested prepetition the court had the authority to review the liability under section 505(a)(1). Noting that its power was discretionary, the court elected to review the valuation because the issue presented was not complicated. Again, the court did not discuss section 505(a)(2)(B).

Similarly, in *In East Coast Brokers & Packers, Inc.,* 142 B.R. 499 (Bankr. M.D.Fla.1992), the court determined that the postpetition expiration of the Florida statute of limitations for contesting a tax assessment did not preclude the bankruptcy court from determining the debtor's challenge to its 1989 real estate tax liability (which was before the court on debtor's objection to the County's claim). The court interpreted section 505 to require "... [a] prior contest and adjudication in order to block reconsideration of a debtor's tax liability by a bankruptcy court." *Id.* at 501. Citing *Ledgemere,* the court also stated: "[t]he mere expiration of the time during which a debtor can pursue its state law remedies does not constitute a contest or adjudication." *Id.* Although the court noted that its power to determine the debtor's tax liability was discretionary, it found it was not inequitable for the court to exercise its power since claims litigation is a necessary and foreseeable aspect of a bankruptcy case. The court never mentioned section 505(a)(2)(B) in its decision.

The court in *In re Millsaps,* 133 B.R. 547 (Bankr.M.D.Fla.1991), considered the debtors' request to avoid certain Internal Revenue Service tax liens that had been satisfied. Noting that the only relief available to the debtors after the sale of the property and the satisfaction of the liens was a refund of the taxes that were paid through the sale and satisfaction of the liens, the court ruled that the limiting language of section 505(a)(2)(B) imposed a condition precedent to bankruptcy court determination of a tax refund, namely, a request for a refund made to the taxing authority. The court found as follows:

> There is no evidence on this record that the Millsaps have ever filed a request for a refund with the Secretary of the Treasury. Absent the satisfaction of that condition, this court, as well as any other court, is precluded from entertaining a refund action.

*Id.* at 553. The court also ruled that the defect could not be cured as of the date of the decision because the debtors were

barred under the applicable statute of limitations from seeking a refund:

> Because they did not then, and cannot now, file a claim for refund with the Secretary, the Millsaps are precluded by Section 7422(a) of Title 26 and by Section 505(a)(2)(B) of the Bankruptcy Code from prosecuting a civil action for a refund in any court, much less this court.

*Id.*

In a recent decision by the United States District Court of the District of Delaware, *In re Continental Airlines, Inc.*, 149 B.R. 76 (D.Del.1993), the City of Denver argued, in the court's words, that "only claims for refunds that are timely asserted to the local governmental entity may later be raised in a bankruptcy proceeding and therefore since ... [the governmental unit] ... determined the request for refunds were not timely, the Bankruptcy Court was without power to consider the claims." 149 B.R. at 85. The district court rejected this argument. It stated:

> The broad grant of power in § 505 cannot fail merely because of a procedural default by the trustee. To decide otherwise would be to say only determinations of a substantive nature are reviewable in a bankruptcy hearing and that any potential procedural default of the trustee cannot be considered by the Bankruptcy Court.
>
> Further, the Court does not agree with Denver's assertion that the time for requesting a refund is the equivalent of a statute of limitations. The Court concludes that the timeliness of the request for a refund does not act as a statute of limitations bar for consideration by the Bankruptcy Court of a tax claim.

*Id.*

The main thrust of *Ledgemere* and the cases in which similar conclusions are reached is that the debtor's creditors should not be penalized for the debtor's prepetition failure to contest taxes. The court in *East Coast Brokers & Packers, Inc., supra*, reached the same conclusion with respect to the debtor's postpetition failure to contest taxes but failed to mention section 505(a)(2)(B). Clearly, construction of the language utilized in 505(a)(2)(B) has not been the subject of many decisions. No cases have explicitly interpreted the meaning of "properly requests." Should the bankruptcy court or the governmental unit determine what a proper request is? Is a proper request a timely request? Is it a request filed in the right place on the right form? Does the failure to correctly adhere to the rules of governmental units prevent the bankruptcy court from considering refund requests at all? Few cases have differentiated between the defaults of prepetition debtors with respect to prepetition taxes and the defaults of debtors-in-possession or trustees with respect to postpetition taxes. The interpretation of section 505(a)(2)(B) where taxes have been assessed and paid postpetition has important ramifications for the administration of bankruptcy cases and the responsibilities of debtors and trustees.

### D. Conclusions of Law

With respect to the instant case, this Court must determine whether the Trustee's request for an order requiring the City to refund taxes can only be obtained after the filing of a proper request for a refund or a determination by the City prior to 120 days from the date of the request. Resolution of this issue turns, in part, upon whether Massachusetts abatement statute is also a refund mechanism and whether the time periods set forth in section 59 constitute a statute of limitations.

The abatement process under Massachusetts law is set forth in Mass.Gen. Laws Ann. Ch. 59, § 59.[2] In sum, it pro-

---

2. Section 59 provides:

A person upon whom a tax has been assessed or the administrator of the estate of such person or the executor or trustee under the will of such person, if aggrieved by such tax, may, except as hereinafter otherwise provided, on or before October first of the year to which the tax relates or, if the tax is other than a poll tax, and the bill or notice was first sent after September first of such year, on or before the thirtieth day after the date on which the bill or notice was so sent, apply in writing to the assessors, on a form approved by the commissioner, for an abatement there-

vides that a tax abatement application must be filed with the municipality within 30 days from the date of the mailing of the tax bill. Although the term refund does not appear frequently in the statutory scheme, several sections do refer to a refund of property tax. For example section 58A provides:

§ 58A. Minimum abatement or refund of property tax

No abatement or refund of property tax, real or personal, shall be granted or paid in an amount less than one dollar.

*Id.* at § 58A. Section 69 entitled "Reimbursement; interest" provides:

§ 69. Reimbursement; interest

A person whose tax has been abated shall, if the tax has been paid, be reimbursed by the town to the amount of the abatement allowed, including all interest and all charges paid therewith except legal costs paid as provided in section sixty-two, with interest on the amount so abated at eight per cent from the time of payment or the due date of the tax, whichever is later. No refund shall be paid on account of an abatement when there remains an outstanding balance of the tax to which the abatement relates, nor shall any interest be paid on account of an abatement for any period during which any part of the abated tax, net of the amount of the abatement, was outstanding.

*Id.* at § 69. Thus, if an abatement is granted and the tax is reduced, and if the real estate taxes have been paid, the taxpayer receives reimbursement of the amount of abatement allowed. It is noteworthy that this statute contains the term "refund" under this statute after an abatement is granted. A refund will not be paid if there is a balance due on the tax for which the abatement was allowed. Thus, the goal of the Massachusetts abatement scheme is to obtain a refund of overpaid tax. It is not a procedure to merely obtain a determination that the tax is in a certain amount of liability. Accordingly, the Court holds that the filing of an abatement application where the property tax has been paid is tantamount to a request for a refund. Without filing an abatement application, under state law a taxpayer cannot obtain a refund of an overpayment.

In *Ledgemere*, Judge Queenan stated that there was no separate abatement pro-

of, and if they find him taxed at more than his just proportion or upon an improper classification, or upon an assessment of any of his property in excess of its fair cash value, they shall make a reasonable abatement; provided that a person aggrieved by a tax assessed upon him under section seventy-five or seventy-six or reassessed upon him under section seventy-seven may apply for such abatement at any time within three months after the bill or notice of such assessment or reassessment is first sent to him. A tenant of real estate paying rent therefor and under obligation to pay more than one half of the taxes thereon may apply for such abatement. If a person other than the person to whom a tax on real estate is assessed is the owner thereof, or has an interest therein, or is in possession thereof, and pays the tax, he may thereafter prosecute in his own name any application, appeal or action provided by law for the abatement or recovery of such tax, which after the payment thereof shall be deemed for the purposes of such application, appeal or action, to have been assessed to the person so paying the same. The holder of a mortgage on real estate who has paid not less than one half of the tax thereon may during the period beginning September twentieth and ending October first of the year in which the tax relates apply in the manner above set forth for an abatement of such tax provided the person assessed has not previously applied for abatement of such tax, and thereupon the right of the person assessed to apply shall cease and determine. The holder of a mortgage so applying for abatement may thereafter prosecute any appeal or action provided by law for the abatement or recovery of such tax in the same manner and subject to the same conditions as a person aggrieved by a tax assessed upon him.

Notwithstanding any other provision of this section, a person who acquires title to real estate after January first in any year, shall for the purposes of this section be treated as a person upon whom a tax has been assessed. An application for exemption under clause Seventeenth, Seventeenth C, Seventeenth D, Eighteenth, Twenty-second, Twenty-second A, Twenty-second B, Twenty-second C, Twenty-second D, Twenty-second E, Thirty-seventh, Thirty-seventh A, Forty-first, Forty-first B, Forty-first C, Forty-second and Forty-third of section five may be made on or before December fifteenth of the year to which the tax relates, or if the bill or notice is first sent after September fifteenth of such year, within three months after the bill or notice is sent. Mass.Gen.Laws Ann. Ch. 59, § 59.

cedure for the refund of local taxes under the Massachusetts tax abatement scheme. This Court respectfully disagrees with this statement. In this Court's view, the Massachusetts abatement procedure is a refund mechanism—indeed the only refund mechanism—where the taxes have been paid.

■ The Massachusetts cases are unanimous in holding that the failure to timely file an abatement application is a jurisdictional bar to granting the application and obtaining appellate review in state court. *See, e.g., Children's Hospital Medical Center v. Board of Assessors of Boston,* 393 Mass. 266, 471 N.E.2d 67 (1984), *General Dynamics Corp. v. City of Quincy,* 388 Mass. 24, 444 N.E.2d 1266 (1983), *MacDonald v. Board of Assessors of Woburn,* 384 Mass. 724 (1981). However, this Court has found no cases, other than cases involving federal taxes where the time for claiming refunds expired prepetition, *see In re Qual Krom South, Inc., supra; In re Millsaps, supra,* that hold that bankruptcy courts are barred from determining the amount of postpetition taxes and ordering refunds under circumstances where debtors or trustee have defaulted in claiming refunds from taxing authorities postpetition. Thus, the outcome of this case depends upon the interpretation of the phrase "properly requests" in section 505(a)(2)(B)(i). This Court concludes the "properly requests" language of section 505(a)(2)(B)(i) imposes a condition precedent to a determination by this Court of the estate's claim to a property tax abatement and refund arising during the pendency of the case. Compliance with the requirement of otherwise applicable law, that is the timely filing of an abatement application (a request for a refund) is a prerequisite to this Court's review of an estate's postpetition entitlement to a refund when the taxes have been paid and section 505(a)(2)(B)(ii) is inapplicable.

As directed by the Supreme Court in *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 240–41, 109 S.Ct. 1026, 1029–30, 103 L.Ed.2d 290 (1989), where the language of the Bankruptcy Code is clear, the Court should look no further than the statute's plain language. The adverb "properly" connotes correctness and dictates conformity with the governmental unit's procedures. If the statute did not have this meaning, the word properly would be superfluous. Since Congress chose to use this adverb, this Court is constrained to give it its plain meaning. A reading of section 505 as a whole supports this interpretation. The broad grant of power of section 505(a)(1) expressly and initially excepts the limitations of subsection (a)(2)(B). The language of section 505(a)(2) ("The court may not so determine") suggests that the condition is not merely a timing mechanism, but rather is a prohibition on this Court's review in the absence of compliance with the condition.

Reference to the legislative history is not warranted in light of the lack of ambiguity in the plain language. *Connecticut National Bank v. Germain,* —— U.S. ——, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). Accordingly, the legislative history's reference to offsets and counterclaims does not compel a different result in this case, particularly where there has been no objection to the City's proof of claim for prepetition taxes filed in 1982, and the issue has not been raised by the Trustee.

■ In the present case, since the Trustee did not file any applications for an abatement with the City for any of the subject years (1988 through 1993), this Court is prevented from determining whether the property taxes were excessive and ordering a refund for the postpetition period. This decision does not mean that this Court will never determine an estate's entitlement to a property tax abatement for the postpetition period. The Court is required under section 505(a)(1) to determine an estate's right to a postpetition abatement or refund where an abatement application has been denied or not acted on within 120 days after filing.

■ Finally, even assuming that this Court had the power to determine the tax obligations and order a refund, under the circumstances of this confirmed Chapter 11 case, this Court would exercise its discre-

tion to abstain from determining the tax dispute raised by the Trustee's Motion. In determining whether to abstain from determining a tax dispute, bankruptcy courts consider the following factors:

1. the complexity of the tax issue to be decided;

2. the need to administer the bankruptcy case in an orderly and efficient manner;

3. the burden on the Bankruptcy Court's docket;

4. the length of time required for trial and decision;

5. the asset and liability structure of debtors; and

6. any prejudice or potential prejudice to both the debtor and taxing authority.

*In re Galvano*, 116 B.R. 367, 372 (Bankr. E.D.N.Y.1990). In the present case, application of these factors warrants abstention.

█ The dispute between the Trustee and the City involves valuation of the Debtor's business over a span of six years. The Chapter 11 plan was recently confirmed in this case (subsequent to the filing of the Trustee's Motion), and there are no other pending matters to stand in the way of closing this twelve year old case. As the Chapter 11 plan provides for payment in full of all claims, the only party to benefit from a determination of entitlement to a refund of property taxes is the Debtor. At this late date in the proceeding, the prejudice to the City needs no explication. Accordingly, the Court, as an alternative ruling, abstains from adjudicating the issues raised by the Trustee's Motion.

### ORDER

In accordance with the memorandum dated May 12, 1993, the Court hereby denies the Chapter 11 Trustee's Motion Pursuant to 11 U.S.C. § 505 to Reassess The Value On The Subject Property, Determine Its Real Estate Tax Liability and To Order a Refund of any Overpayment of Such Taxes. Alternatively, the Court abstains from determining the merits of this tax dispute.