**In re CODY, INC., Debtor.**

**Cody, Inc., Appellant/Plaintiff,**

v.

**County of Orange and Town of Woodbury, Appellees/Defendants.**

**No. 02 Civ. 2764(CM).**

United States District Court,
S.D. New York.

July 15, 2002.

Joseph J. Haspel, Goshen, NY, for Appellant.

Mark Nash, Goshen, NY, David. Hagstram, Vanderwater & Vanderwater, Poughkeepsie, NY, for County of Appellees.

## DECISION AND ORDER
## OF AFFIRMANCE

M'CMAHON, District Judge.

### STATEMENT OF ISSUES
### PRESENTED

The issue presented in this appeal is:

Whether the United States Bankruptcy Court for the Southern District of New York (Hon. Adlai S. Hardin, Jr., Bankruptcy Judge) abused its discretion when an Order it entered on February 11, 2002, dismissing the Adversary Proceeding No. 01–05346, and abstaining pursuant to 28 U.S.C. § 1334(c)(1), from determining plaintiff's tax liability under 11 U.S.C. § 505(a)(1).

### STANDARD OF REVIEW

The general standard of review for bankruptcy appeals is stated in Federal Rules for Bankruptcy Procedure, Rule 8013, which provides:

On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

The exercise of discretion in granting or denying a motion pursuant to abstain pursuant to 28 U.S.C. § 1334(c)(1) and 11 U.S.C. § 505(a)(1) of the Bankruptcy Code is reviewed to determine whether the bankruptcy court abused its discretion

because it "based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990); *In re New Haven Projects Ltd. Liability Co.*, 225 F.3d 283, 289 (2d Cir. 2000), *cert. denied*, 531 U.S. 1150, 121 S.Ct. 1093, 148 L.Ed.2d 966 (2001) (the bankruptcy court did not abuse its discretion to abstain under 11 U.S.C. § 505(a) from redetermining debtor's tax debt); *In re Prudential Lines, Inc.*, 170 B.R. 222, 228–29 (S.D.N.Y.1994) (the bankruptcy court's exercise of discretion to abstain pursuant to § 1334(c)(1) is subject to appellate review under an abuse of discretion standard). *See also, Cohen v. Doyaga*, 2001 WL 257828 (E.D.N.Y. March 9, 2001) and *In re Bean*, 251 B.R. 196 (E.D.N.Y.2000) (while decisions of law are reviewed *de novo*, matters committed to the discretion of the Bankruptcy Court are reviewed for abuse of discretion).

Here, the decision of the Bankruptcy Court to exercise its discretion and abstain under 11 U.S.C. § 505(a) and 28 U.S.C. § 1334(c)(1) from hearing an adversary proceeding to determine whether real property owned by Appellant is tax exempt should be affirmed because the Bankruptcy Court applied the correct legal standard and offered substantial justification for its finding. *See, e.g., In re New Haven Projects Ltd. Liability Co.*, 225 F.3d 283, 289 (2d Cir.2000).

## STATEMENT OF THE CASE

In this case, Appellant/debtor Cody, Inc. ("Cody") appeals from the February 11, 2002 Order of the Honorable Adlai S. Hardin, Jr. ("Order") abstaining from determining, under 11 U.S.C. § 505(a)(1), whether the debtor is exempt from all property taxes because it is a religious corporation. This appeal relates only to tax years 1994, 1995, 1998, and 2001. Appellant does not appeal the Order insofar as it relates to the 1996[1], 1997, 1999 and 2000[2] tax years. Tax certiorari proceedings for those years are currently pending in the Supreme Court of the State of New York, County of Orange.

Cody invokes the general remedy created under § 505(a)(1) to evade (and dictate the result of) specific remedies given the Town and County as taxing authorities under New York State law and specifically Article 7 of N.Y. Real Property Tax Law. Cody's theory is founded on the erroneous assumption that it is entitled to tax-exempt status for all real property for which it is the record owner because it is a religious corporation. However, the burden of demonstrating that the exempt organization is being used exclusively to carry out religious or educational purposes as required under New York Real Property Tax Law § 420–a is on the party seeking the tax exemption, not the taxing authority. *See Long Island Foundation for Educ. and Jewish Research, Inc. v. Michael*, 97 A.D.2d 843, 844, 469 N.Y.S.2d 85 (2d Dept. 1983), *motion for leave to appeal denied*, 62 N.Y.2d 602, 476 N.Y.S.2d 1026, 465 N.E.2d 47 (1984). Cody has carefully avoided litigating that issue in Supreme

---

**1.** There is pending in the Supreme Court of the State of New York, County, and consolidated under Index nos. 4587–96, 5152–97, 4847–99, 4848–99 petitions for review of the tax assessment for 1996–1997, 1997–1998, 1998–1999, 1999–2000 for the parcels designated on the tax map as Section 25, Block 1, Lots 31.22, 45.2 and 46–67. A Note of Issue as to these petitions was filed by petitioner on March 3, 2000.

**2.** There is pending in the Supreme Court of the State of New York, County under Index no. 2000–4449 a petition for review of the tax assessment for 2000–2001 for parcels section 25, Block 1, Lots 31.22, 45.2 and 46–67.

Court of the State of New York, although it has had ample opportunity to do so over the many years involved in these proceedings.

As the Bankruptcy Court aptly concluded,

> [T]he sole purpose [of this Chapter 11 case is] to seek an adjudication under Section 505 of the Bankruptcy Code of the tax status of the debtor and its obligation to pay taxes to the defendants in the adversary proceeding ... [T]his Court should not become involved in any of the differing issues and procedural postures of the various tax years that are involved between the taxing authorities and the debtor. The debtor unquestionably has had ample opportunity to litigate these issues. It is litigating the issues in currently pending proceedings ... [I]t is ... an inappropriate exercise of jurisdiction for this Court to step in at this very, very late date and seek to revisit and relitigate matters that have been or could have been litigated in the State Court system. They are of a quintessential state law character and the appropriate administrative and state judicial authorities should decide them.

(Transcript of Decision, January 3, 2002[3], T24–T26, attached as Exhibit "B" to Brief of Appellant)

In so concluding the Bankruptcy Court correctly assessed the "finer points of the parties' past dealings and relationships, and the more wide-ranging aspects of the balance of powers between local governments and the national government in our federal system." *In re Northbrook Partners LLP*, 245 B.R. 104, 111 (Bankr. D.Minn.2000).

This Court therefore affirms the Bankruptcy Court's Decision to abstain under 28 U.S.C. § 1334(c)(1) from exercising its discretion under 11 U.S.C. § 505(a) to revisit the tax-exempt status of its real property as to all property for which it is the record owner.

## STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

Cody is the record owner of certain parcels of real property located in the Town of Woodbury, hereinafter "Town," Orange County, New York, designated on the tax maps as Section 25, Block 1, Lots 31.22, 45.1, 45.2 and 46 through 67 inclusive. Cody became the record owner of these parcels sometime during 1994. Based upon assessments provided by the Town to the County, the County levied real property taxes on these parcels that went unpaid and continue to be due and owing. No real property taxes have been paid as to any of the parcels that are the subject of this appeal since 1995.

## PRE–PETITION PROCEDURAL HISTORY

Since 1994, Cody has applied to the Town assessor for exemptions for all or some of its lots, filed tax grievance complaints with the Board of Assessment Review of the Town of Woodbury for all or some of its lots in 1994, 1996, 1997, 2000 and 2001 and filed Tax Certiorari Petitions under Article 7 of the N.Y. Real Property Tax Law in the Supreme Court of the State of New York, County of Orange for all or some of its lots in 1994, 1996, 1997, 1999, and 2000. The 1994 tax certiorari proceeding, *Cody Inc. v. Town of Woodbury,* under County Clerk Index No. 4845–94, was deemed abandoned and dismissed by the decision of the Hon. Louis C. Palella, J.S.C. on September 22, 1999, because no trial note of issue was filed within four

---

**3.** The abbreviation "T" is used to refer to the page of the transcript, and the abbreviation "L" is used to refer to the line number of the page of the transcript.

years of the commencement of the action as required under N.Y. Real Property Tax Law § 718.

On or about November 19, 1997, Appellant filed a Complaint in the United States District Court for the Southern District of New York challenging the Town assessor's alleged failure to grant tax exempt status to Cody claiming that Cody's civil rights under the First and Fourteenth Amendments to the United States Constitution were violated under 42 U.S.C. § 1983. The District Court (Brieant, J.) on June 11, 1998 dismissed the Complaint pursuant to 28 U.S.C. § 1341,[4] ("Tax Injunction Act"), holding that a proceeding was available by which property owners dissatisfied with an assessor's initial determination as to an exemption could obtain review of such determination on the merits, and that such a proceeding is adequate as a matter of law to satisfy the statutory prerequisite to invocation of § 1341. *See Cody, Inc. v. Town of Woodbury*, 8 F.Supp.2d 340, 343 (S.D.N.Y.1998), *aff'd in applicable part and dismissed in part*, 179 F.3d 52 (2d Cir.1999).[5]

In October of 2000, the County served Cody with a Petition of Foreclosure venued in the Supreme Court of the State of New York, County of Orange, with respect to the delinquent parcels that are the subject of this appeal. On or about January 10, 2001, Cody served a timely Answer. Cody's sole defense for nonpayment was that all the parcels are exempt from taxation because Cody is a religious corporation, allegedly using all of these parcels for religious and educational purposes. After motion practice heard before the Honorable Peter C. Patsalos, J.S.C., in *In the Matter of the Foreclosure of Tax Liens v. Cody, Inc.*, under County Clerk Index No.2001–3381, the County filed its Request for Judicial Intervention on or about June 18, 2001. Additionally, the County filed a Notice of Motion dated June 15, 2001 and returnable July 6, 2001, seeking an Order striking Cody's Answer and directing foreclosure. At the request of Cody's then-counsel, the Motion was adjourned until August 3, 2001.

## POST–PETITION PROCEDURAL HISTORY

Cody commenced its Voluntary Petition under Chapter 11 on or about July 31, 2001, just three days before the return date of the County's Motion in the pending foreclosure proceeding in the Supreme Court of the State of New York, County of Orange. This adversarial proceeding was filed on or about August 13, 2001.

The adversarial proceeding is based upon the same set of facts and circumstances on which the foreclosure proceeding was brought in State court and, but for the filing of this bankruptcy proceeding, the State court would have addressed.

On November 26, 2001, Cody, Inc. moved for summary judgment pursuant to Fed.R.Civ.P. 56 on the ground that it was entitled to tax-exempt status as a matter of law. On December 20, 2001, the Town and the County filed opposition to Appellant's motion.

The County vigorously disputed that Cody, Inc. used the subject property for tax exempt purposes exclusively (if indeed

---

**4.** 28 U.S.C. § 1341 states that "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." courts of such State.

**5.** The relevant proceeding should be commenced in the New York State Supreme Court by a special proceeding under Article 7 of the New York Real Property Tax Law, § 700 *et seq.*

it did at all), that the owner conducted business exclusively for tax exempt purposes; and that pecuniary profit inured to the organization's officers, members or employees, as required for tax exemption under New York State Real Property Tax Law § 420–a. In support of such contentions, the County urged that the stated purpose of the organization was to provide loan and check cashing services. (Affidavit in Opposition of Mark S. Nash, Esq., Ex. "A" attaching ledger sheets of Cody Inc. and Ex. "B" attaching the testimony of Moshe Friedman, and included under as "Doc. 14" of the Record on Appeal that was transmitted to the District Court by the Bankruptcy Court). Cody's books and records showed that the corporation was engaged virtually exclusively in non-exempt activities such as check cashing and "loan-exchanges" in which Appellant "take[s] out money to cash checks for people." (Deposition of Moshe Friedman, T89—T91–16; T129, L17—T130, L19, T149, L11—T151, L21, annexed hereto as Exhibit "B" and to the Affidavit in Opposition of Mark S. Nash, Esq. as Exhibit "B") The books and records of Cody, Inc. showed thousands of dollars were paid to corporate officers, none of whom according to Appellant received salaries, benefits, wages, fringe or other consideration from Cody, Inc. (See, Memorandum of Law dated December 19, 2001 and Affidavit of Mark Nash, Esq.,) submitted by the County of Orange in opposition to Cody's Motion for summary judgment; and Cody's Ledger Sheets (annexed hereto as Exhibit "C") and Answers to Interrogatory Nos. 1.(d) and (f) (annexed hereto as Exhibit "D").

The Town cross-moved for summary judgment on the grounds that, since the debtor had filed written grievance complaints with the Town Board of Assessment Review in 1994, 1996, 1997, 2000 and 2001, which were denied after a hearing pursuant to N.Y. Real Property Tax Law § 525, the Bankruptcy Court does not have jurisdiction under 11 U.S.C. § 505(a) to review such claims previously adjudicated. The Town also cross-moved for the Bankruptcy Court to abstain under the *Tax Injunction Act,* 28 U.S.C. § 1341, because of the pendency of tax certiorari petitions pending in the Supreme Court, Orange County for the years 1996, 1997 and 1999, and for the Court to abstain pursuant to 11 U.S.C. § 505(a)(1), because the primary benefit of the adversary proceeding would serve the debtor because the largest unsecured creditors of the debtor are insiders. The County did not make a motion, but opposed appellant's motion.

On February 11, 2002, the United States Bankruptcy Court for the Southern District of New York (Hon. Adlai S. Hardin, Jr., Bankruptcy Judge) entered an Order dismissing the Adversary Proceeding No. 01–05346, and abstaining from determining Appellant's tax liability under 11 U.S.C. § 505(a)(1) and 28 U.S.C. § 1334(c)(1), finding *inter alia* that New York State law provided Appellant with ample opportunity to invoke state law procedures to challenge real estate taxes and alleged exempt status; and that Appellant did, in varying degrees, invoke State law remedies to challenge its tax exempt status since 1994 (including four tax certiorari proceedings currently pending under Article 7 of New York's Real Property Tax Law for the relevant tax rolls for 1996, 1997, 1999, and 2000). (*See,* Order attached to Brief of Appellant as Exhibit "A").

On February 19, 2002, Appellant filed a Notice of Appeal limited to the tax years 1994, 1995, 1998 and 2001—the years for which certiorari proceedings are not currently pending.

### Conclusions of Law

## THE BANKRUPTCY COURT LACKS JURISDICTION OVER THE INSTANT MATTER AS TO THE 1994 TAX YEAR

■ In deciding to abstain as a discretionary matter, Judge Hardin questioned whether he had jurisdiction over at least some of the issues before him. No doubt in the interest of simplifying a rather complex situation in which he did not intend to become involved, he elected to abstain without reaching the jurisdictional question. However, as a matter of logic, a court that lacks jurisdiction over a matter cannot "abstain" from deciding that matter. Purely as a matter of form, Judge Hardin should have determined the jurisdictional question first. I therefore address it at the outset.

■ It seems clear to this Court that, for the year 1994—one year that is the subject of this appeal—the Bankruptcy Court lacked jurisdiction over the issues before it.

Appellant brought a tax certiorari proceeding challenging its assessment for 1994, which was then abandoned for failure to file a note of issue within four years. That strategy led to the entry of a judgment that effectively determines the question of the parcels' tax exempt status the defendants' favor—a judgment that neither Judge Hardin nor this Court has the power to overturn or undermine.

■ Under the *Rooker–Feldman* doctrine, *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Moccio v. New York State Office of Court Administration,* 95 F.3d 195 (2d Cir.1996), a Federal district court (and the Bankruptcy Court that is an arm of said Court) is without subject matter jurisdiction to review final judgments of state courts. Thus, no federal district or bankruptcy court has jurisdiction over any claim that is "inextricably intertwined" with a state court judgment. *Feldman, supra,* 460 U.S. at 483 n. 16, 103 S.Ct. 1303. "A federal claim is 'inextricably intertwined' with the underlying judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issued before it." *Birmingham v. Ogden,* 70 F.Supp.2d 353, 358 (S.D.N.Y.1999). Of course, any determination by the Bankruptcy Court that the parcels whose assessments were effectively upheld by Appellant's failure to file a timely note of issue would undermine the final judgment in the 1994 tax certiorari proceeding, which finally determined that the parcels were in fact taxable. Thus, the Bankruptcy Court lacked jurisdiction to entertain Appellant's claim relating to the 1994 tax year in the adversary proceeding.

While Appellant complains that this "default judgment" does not constitute any sort of determination on the merits, it is wrong. On September 13, 1999, the Supreme Court of the State of New York, County of Orange (Palella, J.), found that the 1994 proceeding had been abandoned, as provided by § 718 of the N.Y. Real Property Tax Law, because a timely not of issue was not filed, nor was any application made to a court of competent jurisdiction to extend the time to file a note of issue. Under N.Y. Real Property Tax Law § 718(1), this Order constituted "a final adjudication of all issues raised in the proceeding. . . ." *Waldbaum's No. 122 v. BAR of City of Mt. Vernon,* 58 N.Y.2d 818, 459 N.Y.S.2d 263, 445 N.E.2d 646 (1983) (finding that an order dismissing a tax certiorari petition for failure to file a note of issue within two years, constitutes a final adjudication of all issues raised in the proceeding as provided under § 718 of N.Y. Real Property Tax Law). Judge Palella's is

unequivocally a final Order of a Court of competent jurisdiction that was entered before the commencement of this adversary proceeding. One of the issues comprehended by that order was, of course, the tax-exempt (or, to be more accurate, the taxable) status of the parcels. A federal court has no jurisdiction to determine that they were tax exempt for the tax year 1994.

■ For the years 1995, 1998, and 2001, there is no similar final state court judgment. Therefore; *Rooker–Feldman* may be inapplicable. If there was no change in use during subsequent years for some or all of the parcels that were the subject of the 1994 tax certiorari proceeding, it may be that the challenge to the years is "inextricably intertwined" with the 1994 order and judgment, as I cannot make that assessment on the record before me, I turn to the issue of abstention.

## THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION IN ABSTAINING FROM DECIDING IF APPELLANT'S REAL PROPERTY IS EXEMPT FROM TAXATION

■ Assuming arguendo that the bankruptcy court had jurisdiction over any or all of the year that are the subject of this appeal, and/or that mandatory abstention was not compelled, I conclude that Judge Hardin did not abuse his discretion by abstaining, either under 28 U.S.C. § 1332(c) or 11 U.S.C. § 505(a)(1).

■ 28 U.S.C. § 1334(c) sets forth the statutory standard that bankruptcy courts must employ when evaluating a motion for permissive abstention in the context of adversary proceedings.[6] Pursuant to that

section, courts have broad discretion to abstain from hearing claims arising under Title 11, or arising in or related to a case under Title 11, whenever appropriate "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1). This statute codifies the " 'permissive abstention doctrine' and 'demonstrate[s] the intent of Congress that concerns of comity and judicial convenience should be met, not by rigid limitations on the jurisdiction of federal courts, but by the discretionary exercise of abstention when appropriate in a particular case.' " *Zack v. United States*, 224 B.R. 601, 606 (E.D.Mich.1998), *citing Matter of Gober*, 100 F.3d 1195, 1206 (5th Cir.1996) (*quoting Matter of Wood*, 825 F.2d 90, 93 (5th Cir.1987)).

■ In determining whether to exercise permissive abstention under § 1334(c) courts have considered **one or more** (not necessarily all) of twelve factors:

(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy

---

**6.** As Appellant is not appealing the Order as to the tax rolls for which tax certiorari proceedings are pending in a state court, mandatory abstention is not required under 28 U.S.C. § 1334(c)(2). *See In re Masterwear Corp.*, 241 B.R. 511, 521 n. 11 (Bankr. S.D.N.Y.1999).

court, (9) the burden of [the court's] docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of non-debtor parties.

*In re 610 W. 142 Owners Corp.,* 1999 WL 294995 (S.D.N.Y. May 11, 1999), *citing In re Craft Architectural Metals Corp.,* 115 B.R. 423, 432 (E.D.N.Y.1989) (*quoting In re Republic Reader's Serv. Inc.,* 81 B.R. 422, 429 (Bankr.S.D.Tex.1987)).

This statute has been widely applied by bankruptcy courts to abstain from hearing tax disputes between debtors and state and/or federal taxing authorities. *See, e.g., Zack v. United States,* 224 B.R. 601 (E.D.Mich.1998), (bankruptcy court properly exercised its discretion to abstain from hearing adversary proceeding under 28 U.S.C.A. § 1334(c)(1) in the interest of justice and comity with the tax court, and where the Appellant/debtor presented no claims that could not have been resolved in tax court); *In re Williams,* 209 B.R. 584 (Bankr.D.R.I.1997) (permissive abstention under 28 U.S.C. § 1334(c)(1) by the bankruptcy court where the outcome of the adversary proceeding would have little or no effect on the estate, there was litigation currently pending before the United States Tax Court; and the litigation required the resolution of complex issues of tax law; and where there was a specialized forum for hearing the tax dispute, *i.e.* the United States Tax Court, and where resolution of the issues would require the court to interpret decisions of the United States Tax Court); *In re 400 South Main Street,* 133 B.R. 282 (D.R.I.1991). (bankruptcy court recommended to district court that the court voluntarily abstain under § 1334(c) in the interest of judicial economy and to avoid conflicting decisions where there was a pending action in state

court to recover under the note and mortgage on the debtor's property, the issues raised in that suit were state law causes of action and involved essentially the same nuclei of facts raised in the adversary proceeding, and the state court forum was more appropriate to the resolution of the adversary claims).

In this adversary proceeding, the Bankruptcy Court correctly applied 28 U.S.C. § 1334(c)(1) and the factors enunciated in *In re 610 W. 142 Owners Corp.* that Judge Hardin deemed relevant, in concluding that abstention was appropriate. First, the Bankruptcy Court found that the tax issues "are of a quintessential state law character and they should be decided by the appropriate administrative and state judicial authorities." (Transcript of Decision of January 3, 2002, T26, L7–12) "[The tax issues are] peculiarly state law ... exclusively state law...." (Transcript of Decision of January 3, 2002, T12, L1–18) (Factor 2). Second, Judge Hardin explained that "State law provides procedures for a taxpayer to challenge real estate taxes and upon failure of its challenge before the local taxing authorities to seek review of the determinations against it with respect to taxability of real estate or the tax exempt status of the owner through Article [7] of the Real Property Law. In this case, the record before me indicates that this debtor—this taxpayer—has in varying degrees, depending upon the year, invoked its alleged tax exempt status and challenge[d] the taxes that the taxing authorities have levied...." (Transcript of Decision of January 3, 2002, T22, L17–22) (Factor 4) Third, the Bankruptcy Court expressed its concern about the complexity of the tax issues and the state law applicable to those issues, especially in light of the tortured history and status of the Appellant's tax grievance complaints with the Board of Assessment Review of

the Town and tax certiorari petitions filed in State court, the foreclosure proceedings and the Federal civil rights complaint. As the Court explained,

> I have a real problem with stepping in at this point because [there] are all gradations involving the different years as to the degree that the matter has been or now is in litigation but it either has been, is nor or could have been in litigation to the extent that it is not now or wasn't, then that as a matter of state law may bar the taxpayer but it all seems to me ought to be decided in the State court.

(Transcript of Decision of January 3, 2002, T12, L1–18) (Factor 3.)

Finally the Bankruptcy Court alluded to Appellant's forum shopping (Factor 10) when it noted:

> In addition [to the four Article 7 proceedings pending in state court], the debtor prior to filing under Chapter 11 in this Court, commenced a litigation in the ... Federal District Court for the Southern District of New York ... seeking a determination of its taxability as a religious corporation.... It was adjudicated by Judge Brieant, who dismissed the proceeding on the ground that the debtor, then just the taxpayer, had an appropriate and adequate remedy to obtain an adjudication of its obligations and rights as a purported tax exempt religious corporation and it could not, as a consequence, avail itself of Federal Court jurisdiction.... The debtor then filed this Chapter 11 case during the year 2001; the sole purpose being to seek an adjudication under Section 505 of the Bankruptcy Code of the tax status of the debtor and its obligation to pay taxes to the defendants in the adversary proceeding.

(Transcript of Decision of January 3, 2002, T24, L2–25) (Factors 10 and 4).

Thus the Bankruptcy Court properly exercised its discretion in the interest of justice and comity with the local Town Board of Assessment administrative review and State court in finding that, "If there ever was an appropriate case for abstention ... this is it." (Transcript of Decision of January 3, 2002, T11, L22—T12, L21).

In the alternative, Judge Hardin had the discretion to abstain under 11 U.S.C. § 505(a)(1) of the Bankruptcy Code, which provides in pertinent part that:

> Except as provided in paragraph (2) of this subsection, the court *may* determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction. (italics added.)

As this language indicates, a bankruptcy court's authority to determine a debtor's tax liability is purely discretionary. *See, In re New Haven Projects Ltd. Liability Co.,* 225 F.3d 283, 288, *cert. Denied,* 531 U.S. 1150, 121 S.Ct. 1093, 148 L.Ed.2d 966 (2001). ("The exercise of such discretion is, of course, subject to the explicit limitations in Section 505 itself, and must be informed by the purpose underlying the statute.") *See also, In re Galvano,* 116 B.R. 367, 372 (Bankr. E.D.N.Y.1990).

In determining whether to exercise the discretionary authority provided in § 505(a)(1), courts have weighed a number of factors, including:

1. The complexity of the tax issues to be decided;
2. The need to administer the bankruptcy case in an orderly and efficient manner;

3. The burden on the bankruptcy court's docket;

4. The length of time required for trial and decision;

5. The asset and liability structure of the debtor;

6. The prejudice to the debtor relative to the prejudice to the taxing authority from inconsistent assessments.

*In re Galvano,* 116 B.R. at 372.

■ As a general proposition, the policy underlying determinations of tax liability pursuant to § 505 is to protect creditors. *Id.* However, where the debtor's general unsecured creditors will not benefit from the requested reassessment, bankruptcy courts generally abstain from exercising their discretion under § 505(a)(1),; *In re Eddyville Corp.* 1998 WL 106143 (S.D.N.Y. March 10, 1998); *In re Swan,* 152 B.R. 28 (Bankr.W.D.N.Y.1992); *In re Beisel,* 195 B.R. 378 (Bankr.S.D.Ohio 1996); *In re St. John's Nursing Home, Inc.,* 154 B.R. 117 (Bankr.D.Mass.1993).

In the instructive case of *In re Eddyville Corp.,* the debtor's chief asset was a parcel of real property worth $350,000.00, subject to a first mortgage in the principal sum of $200,000.00, plus several years of interest. The debtor filed for Chapter 11 protection and brought a motion pursuant to 11 U.S.C. § 505(a) for a determination of the amount of its real property taxes from 1988 through the debtor's bankruptcy petition date in 1995. The debtor had not paid any of the taxes at issue nor had the taxes previously been challenged. The bankruptcy court decided to abstain from determining taxes under § 505(a) on the grounds of potential prejudice to the taxing authorities due to the length of time under considered, and very little likelihood of benefit for unsecured creditors. The debtor appealed and the district court affirmed the bankruptcy court's determination, finding, *inter alia,* that abstention is appropriate where granting relief under § 505 would not benefit unsecured creditors by making available funds for repaying them. *Id., In re Eddyville Corp.,* 1998 WL 106143.

■ Although the Bankruptcy Court in this case applied 28 U.S.C. § 1334(c)(1) in concluding that abstention was warranted, Judge Hardin expressly considered the lack of any benefit to unsecured creditors who are not also insiders when he reached his conclusion. The Bankruptcy Court agreed with defendants that there was a "negligible [independent] creditor pool in this case." (Transcript of Decision of January 3, 2002, T17, L13–25). Moreover, there was no evidence of unsecured general creditors who are not insiders (Factor 5) who might benefit from the Bankruptcy Court's intervention on this issue. Indeed, the uncontroverted evidence was to the contrary. The largest single creditor is Moshil, Inc. The claim is $78,000.00. Moshe Friedman, the President and a Director of Cody, Inc., testified that Moshil, Inc. was owned by himself and a brother (Testimony of Moshe Friedman, T154–5). He stated the loan was made to buy the buildings (i.e., 1993). No payments have been made on it. The second largest creditor is Mill Pond Management with a claim in the amount of $38,450.00. Moshe Friedman was vague as to who was a principal in it stating it was somebody like "Alter Landau," that the debt was very old and that Issac Landau, a Director, brought the money in. (Testimony of Moshe Friedman T158–160). He also said the Mill Pond Management loan was made to purchase the properties, which would have been in 1993 or 1994. (T164). The third largest creditor, H.I. Plumbing, with a claim of $18,000.00 has as its principal a person named Hershel Indig, who is a member of the congregation. (T174–5).

Thus, the Bankruptcy Court's factual finding that there is a "negligible [independent] creditor pool in this case" was amply supported by the record.

Appellant argues that permissive abstention by the Bankruptcy Court cuts off its only avenue for a determination of its tax exempt status. However, Appellant does not dispute that the claims it raises in the adversary proceeding could have been raised and disposed of in state court in the pending tax certiorari proceedings—and that they will be disposed of in the pending proceeding for the years not appealed from. Indeed, bankruptcy courts in this state consistently abstain from real property tax assessment issues because New York has a thorough procedure by which taxpayers may contest tax assessments through administrative hearings and appeals to the New York State Supreme Court. *See, e.g., Id. In re Galvano; In re Eddyville.*

Moreover, the factors of efficiency and burden on the bankruptcy court, and prejudice to the taxing authorities all apply here. The complexity of state tax issues to be decided, the length of time required for trial, and the burden on the Bankruptcy Court's docket, all militate in favor of abstention here. Cody's contentions that the tax issues to be decided are not complex, that the trial will not incur significant time for trial, and that such a trial will not prejudice the taxing authorities, are simply wrong under the facts (*see, e.g.* County's Counter Statement Pursuant to Local Bankruptcy Rule 7056–1, annexed to the Brief of Appellant as Exhibit "D") and tortured history of this dispute. And while it is theoretically possible that different parcels were used differently in different years, so that their tax exempt status could vary from year to year, the chances of inconsistent adjudications concerning the same lots are magnified should this issue be litigated in two courts.

Consequently, the Bankruptcy Court's decision to abstain should not be disturbed.