In re **HOSPITALITY VENTURES/LAVISTA, a Georgia General Partnership, Debtor.**

**Hospitality Ventures/Lavista, a Georgia General Partnership, Plaintiff,**

v.

**Heartwood 11, L.L.C., Vesta Holdings I, L.L.C., and Vesta Holdings, Inc., Defendants and Third–Party Plaintiffs,**

v.

**Dekalb County, Georgia, and Tom Scott, Tax Commissioner, Dekalb County, Georgia, Third–Party Defendants.**

**Bankruptcy No. 01–88200–PWB. Adversary No. 03–6596.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Aug. 18, 2004.

Joshua M. Katz, Louis G. McBryan, Macey, Wilensky, et al., Atlanta, GA, for debtor.

Bruce Z. Walker, Mark S. Marani, Cohen, Pollock, Axelrod & Small, Atlanta, GA, for Defendants and Third–Party Plaintiffs.

Mark A. Thompson, Assistant County Attorney, Decatur, GA, for Third–Party Defendants.

## MEMORANDUM OPINION WITH REGARD TO MOTIONS FOR ABSTENTION

PAUL W. BONAPFEL, Bankruptcy Judge.

Section 505(a) of the Bankruptcy Code provides that the bankruptcy court "may determine the amount or legality of any tax ... whether or not previously assessed." Invoking this statute, the chapter 11 debtor seeks a redetermination of ad valorem taxes on its hotel, alleging that they were based on erroneously high assessments of its value.

The purchaser of the tax claims and the taxing authority have moved the Court to abstain under 28 U.S.C. § 1334(c)(1), which permits abstention "in the interest of justice, or in the interest of comity with State courts ˙or respect for State law." Alternatively, noting § 505(a)'s language that a bankruptcy court *may* determine the amount or legality of a tax, they assert that the Court's jurisdiction to redetermine taxes under § 505(a) is discretionary and that the Court should decline to exercise it. In general, they contend that the Court should not review the taxes because granting relief would not benefit the debtor's unsecured creditors.

Because it is too late to challenge the taxes under state law, the debtor has no remedy if the Court abstains. Thus, abstention here is preclusive: It will effectively deny the remedy the debtor seeks under federal bankruptcy law. The Court concludes that § 1334(c)(1) permits abstention only if there is an alternative forum and that § 505(a) does not permit a bankruptcy court to decline to exercise jurisdic-

tion other than under § 1334(c)(1). The Court will, therefore, deny the motions. In doing so, the Court does not decide whether any of the arguments raised by the abstention motions provides a defense to § 505(a) relief on the merits.

## I. ISSUES IN THE ADVERSARY PROCEEDING

Hospitality Ventures/Lavista ("Debtor") filed its Chapter 11 petition on December 3, 2001, and has continued to operate its hotel, its only substantial asset. Debtor's complaint asserts that the DeKalb County Board of Tax Assessors valued the hotel for 1997 and 1998 at $6,178,700, close to three times more than the Board's valuation of $2,135,600 for the preceding two years (1995–96) and over three and a half times its valuation of $1,681,030 for the following four years (1999–2002). Debtor contends that the assessed values should have been $1,541,909 for 1997 and $1,466,897 for 1998. If reduction of assessments results in proportionate reduction of taxes, use of Debtor's values lowers 1997 taxes from about $99,300 to about $24,800 and 1998 taxes from about $93,400 to about $22,200, for total reductions of about $145,700.

■ Although Debtor failed to challenge the assessments within the time that Georgia law permits under O.C.G.A. § 48–5–311(e), § 505(a)[1] allows a chapter 11 debtor, as the representative of the bankruptcy estate, to contest ad valorem taxes on the ground that property was not properly assessed even if the debtor's prior failure to contest the assessment precludes any relief under state law. *E.g., In re Piper Aircraft Corp.*, 171 B.R. 415 (Bankr. S.D.Fla.1994); *In re East Coast Brokers & Packers, Inc.*, 142 B.R. 499 (Bankr. M.D.Fla.1992); *In re AWB Assocs., G.P.*, 144 B.R. 270 (Bankr.E.D.Pa.1992); *Ledgemere Land Corp. v. Town of Ashland (In re Ledgemere Land Corp.)*, 135 B.R. 193, 196 (Bankr.D.Mass.1991); *In re A.H. Robins Co.*, 126 B.R. 227 (Bankr.E.D.Va. 1991).

■ Defendant Vesta Holdings I, LLC, as nominee for Defendant Heartwood 11, LLC, successor by merger to Heartwood 11, Inc., (collectively, "Vesta Holdings"), acquired the tax claims and received partial payment under a payment agreement dated June 11, 1999. (Memorandum of Law in Support of Defendant's Motion for Abstention ¶¶ 1, 3 & Exhibit "A"; Proof of Claim of Vesta Holdings (claiming nothing for 1997 taxes and showing payment of $38,930.60 on 1998 taxes)). For purposes of § 505(a), the fact that a third party purchases tax claims is immaterial. *See In re Piper Aircraft Corp.*, 171 B.R. 415 (Bankr.S.D.Fla.1994). After Debtor defaulted under the agreement, a tax sale was scheduled. On December 3, 2001, the day before the scheduled tax sale, Debtor filed its chapter 11 petition.

---

1. 11 U.S.C. § 505(a) provides:

(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(2) The court may not so determine—

(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title; or

(B) any right of the estate to a tax refund, before the earlier of—

(i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or

(ii) a determination by such governmental unit of such request.

Georgia law provides that ad valorem taxes have a first priority lien on the real estate. O.C.G.A. § 48–2–56(b). Thus, the unpaid tax claims here have priority over the claim of about $2 million held by SLT Realty Limited Partnership ("SLT") that is secured by the hotel. Debtor's proposed chapter 11 plan divides SLT's claim into a secured claim of $1 million, which will be paid in full with interest, and an unsecured deficiency claim of $1 million, a small part of which will be paid like other unsecured claims. The proposed plan calls for unsecured creditors, whose claims, including SLT's, add up to a total of about $1.2 million, to receive their pro rata share of payments totaling $18,000, or 1.5 percent of their claims, over three years. As part of the plan, Debtor proposed to object under § 505(a) to the tax claims of Vesta Holdings and to pay the amounts allowed, with interest.

Vesta Holdings objected to the Court's consideration of the plan prior to determination of the amount of its claims. Debtor thereafter commenced this adversary proceeding, almost two years after the filing of the chapter 11 petition. Proceedings with regard to confirmation have been deferred pending developments in this proceeding. Thus, whether the plan as proposed meets the confirmation requirements of § 1129(a) and whether the outcome of this proceeding has any bearing on those issues are questions for another day.

Debtor's complaint seeks a refund from Vesta Holdings of the alleged overpayment of 1997 taxes and a determination of its remaining obligation for 1998 taxes based on reassessments of the hotel's value. Vesta Holdings answered, denying Debtor's right to relief, and filed a third party complaint against DeKalb County, Georgia, and its tax commissioner, Tom Scott (collectively, "DeKalb County"), which had received payments of the full amounts of the taxes assessed for 1997 and 1998. The third party complaint alleges that, if the Court orders a refund or reduction of Vesta Holdings' claims, DeKalb County must return to Vesta Holdings the amount of the refund or reduction or Vesta Holdings should be allowed to rescind its purchase of the tax claims. DeKalb County disputes any liability to Vesta Holdings.

■ The Court has jurisdiction under 28 U.S.C. § 1334(b) over Debtor's complaint for § 505(a) relief as a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (O). The Tax Injunction Act, 28 U.S.C. § 1341, does not restrict determination of taxes under 11 U.S.C. § 505(a). *See In re Stoecker,* 179 F.3d 546, 549 (7th Cir.1999); *City Vending of Muskogee, Inc. v. Oklahoma Tax Comm'n,* 898 F.2d 122, 123 (10th Cir.1990); *Adams v. Indiana,* 795 F.2d 27, 29 (7th Cir.1986).

## II. The Abstention Issues

Vesta Holdings and DeKalb County have moved this Court to abstain under 28 U.S.C. § 1334(c)(1) or to decline to exercise jurisdiction under 11 U.S.C. § 505(a). In support of their motions, they point out that Debtor's proposed chapter 11 plan provides for only minuscule payment to unsecured creditors and that reduction of the tax claims will benefit only Debtor and the secured creditor, SLT, without affecting the distribution to unsecured creditors. They also argue that DeKalb County and its taxpayers will be substantially prejudiced if the taxes are reduced because DeKalb County has already collected the taxes (in exchange for its assignments of the claims). Moreover, they assert that § 505(a) review of tax claims will impair DeKalb County's collection of taxes through sales of tax liens, because purchasers who buy them will be buying potential lawsuits by debtors in bankruptcy

who have not previously challenged their taxes. DeKalb County should not be subjected to such prejudice, they continue, where Debtor failed to take any action to challenge the taxes under either Georgia procedures or in this bankruptcy case for more than five years after the 1998 assessment and where the sole beneficiaries of any reduction will be Debtor and its secured lender.

The *gravamen* of their argument is that a bankruptcy court should abstain or decline to exercise discretionary jurisdiction under § 505(a) if granting relief will not serve a bankruptcy purpose of the statute—either the need for prompt determination of a tax so that the case can be promptly concluded or the need to protect creditors from an excessive tax that the debtor failed to challenge. Because neither purpose exists here, they conclude, the Court should not hear Debtor's claim.

(The arguments of DeKalb County and Vesta Holdings raise at least two other issues. One is whether § 505(a)(2)(B) precludes relief with regard to refund of a tax that has been paid in the absence of compliance with state law procedures. The second is whether the payment agreement was a prepetition contest and adjudication of the taxes that, under § 505(a)(2)(A), precludes relief. These issues relate to the merits of Debtor's entitlement to § 505(a) relief and are not addressed herein.)

Because Debtor will have no remedy if this Court does not hear its claims, the critical issue in this proceeding is whether the absence of an alternative forum prevents a bankruptcy court in a § 505(a) dispute from abstaining under § 1334(c)(1) or from declining to exercise jurisdiction under § 505(a) itself. Courts have not always addressed both statutes when considering abstention in a § 505(a) proceeding. Most courts have exercised discretion with regard to hearing a § 505(a) claim without even mentioning § 1334(c)(1)[2] or note it without any meaningful discussion;[3] courts that consider both statutes have concluded either that § 1334(c)(1)

**2.** *E.g., Internal Revenue Service v. Luongo (In re Luongo)*, 259 F.3d 323 (5th Cir.2001); *New Haven Projects LLC v. City of New Haven (In re New Haven Projects LLC)*, 225 F.3d 283 (2d Cir.2000); *Cunningham v. Georgia Dept. of Revenue (In re Cunningham)*, 278 B.R. 290 (Bankr.M.D.Ga.2002); *In re R–P Packaging, Inc.*, 278 B.R. 281 (Bankr.M.D.Ga.2002); *In re The Railroad Street Partnership*, 255 B.R. 644 (Bankr.N.D.N.Y.2000); *Eddyville Corp. v. Ulster County (In re Eddyville Corp.)*, 1998 WL 106143 (S.D.N.Y. Mar.10,1998); *In re Onondaga Plaza Maintenance Co.*, 206 B.R. 653 (Bankr.N.D.N.Y.1997); *Shapiro v. United States (In re Shapiro)*, 188 B.R. 140 (Bankr. E.D.Pa.1995); *Anderson v. United States (In re Anderson)*, 171 B.R. 549 (Bankr.W.D.Va. 1994); *Building Technologies Corp. v. City of Hannibal (In re Building Technologies Corp.)*, 167 B.R. 853 (Bankr.S.D.Ohio 1994); *Wood v. United States (In re Wood)*, 1994 WL 759753 (Bankr.N.D.Ga. Nov.21, 1994); *In re St. John's Nursing Home, Inc.*, 154 B.R. 117 (Bankr.D.Mass.1993), *aff'd,* 169 B.R. 795 (D.Mass.1994); *In re Swan*, 152 B.R. 28 (Bankr.W.D.N.Y.1992); *Queen v. United States (In re Queen)*, 148 B.R. 256 (S.D.W.Va. 1992), *aff'd* 16 F.3d 411 (4th Cir.1994) (table); *In re AWB Associates, G.P.*, 144 B.R. 270 (Bankr.E.D.Pa.1992); *In re 499 W. Warren Street Assocs., L.P.*, 143 B.R. 326 (Bankr. N.D.N.Y.1992); *In re East Coast Brokers & Packers, Inc.*, 142 B.R. 499 (Bankr.M.D.Fla. 1992); *El Tropicano, Inc. v. Garza (In re El Tropicano, Inc.)*, 128 B.R. 153 (Bankr. W.D.Tex.1991); *In re A.H. Robins Co.*, 126 B.R. 227 (Bankr.E.D.Va.1991); *In re Galvano*, 116 B.R. 367 (Bankr.E.D.N.Y.1990); *In re Hunt*, 95 B.R. 442 (Bankr.N.D.Tex.1989).

**3.** *E.g., Gossman v. United States (In re Gossman)*, 206 B.R. 264 (Bankr.N.D.Ga.1997); *In re Beisel*, 195 B.R. 378 (Bankr.S.D.Ohio 1996); *D'Alessio v. Internal Revenue Service (In re D'Alessio)*, 181 B.R. 756 (Bankr. S.D.N.Y.1995); *In re Diez*, 45 B.R. 137 (Bankr.S.D.Fla.1984).

governs the question,[4] that § 505(a) does,[5] or that the bankruptcy court may abstain under either.[6]

The statutes are in different titles of the United States Code, and their provisions became a part of bankruptcy law in different ways and at different times, as discussed below. Moreover, abstention has different legal consequence depending on which statute the bankruptcy court uses. Under 28 U.S.C. § 1334(d), the courts of appeals do not have jurisdiction of an appeal from a decision to abstain pursuant to § 1334(c)(1), *Cody, Inc. v. County of Orange (In re Cody, Inc.)*, 338 F.3d 89 (2d Cir.2003), *aff'g in part and dismissing appeal in part from* 281 B.R. 182 (S.D.N.Y. 2002), but they may hear an appeal of a bankruptcy court's decision to abstain under § 505(a). *New Haven Projects LLC v. City of New Haven (In re New Haven Projects LLC)*, 225 F.3d 283 (2d Cir.2000). Without considering separately whether each authorizes abstention, the Court risks confusion over their meaning and import. Thus, the Court will first consider abstention under § 1334(c)(1) and will then turn to the question under § 505(a).

### III. ABSTENTION UNDER § 1334(c)(1)

28 U.S.C. § 1334 establishes the subject matter jurisdiction of the district courts that bankruptcy judges exercise by refer-

ral pursuant to 28 U.S.C. § 157(a). Subsection (a) of § 1334 grants original and exclusive jurisdiction over bankruptcy cases, and subsection (b) grants original but nonexclusive jurisdiction over civil proceedings arising under the Bankruptcy Code or arising in or relating to a bankruptcy case. Subsection (c) authorizes abstention, either permissive under (c)(1) or mandatory under (c)(2). Because § 1334(c)(2) expressly conditions mandatory abstention on the existence of a state forum in which the dispute may be timely commenced and adjudicated, it is inapplicable here.

Section 1334(c)(1) provides:

Nothing in this section [28 U.S.C. § 1334] prevents a [bankruptcy court] in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

 Consideration of whether the lack of an alternative forum precludes permissive abstention under this section properly begins with the general principle of federal jurisdiction that federal courts have a "virtually unflagging obligation" to exercise their validly conferred jurisdic-

---

4. *E.g., Miller v. Internal Revenue Service (In re Miller)*, 300 B.R. 422, 432 n. 9 (Bankr. N.D.Ohio 2003) (ultimate power of abstention granted by § 1334(c)(1)); *Montgomery Ward Holding Corp. v. Pappas (In re Montgomery Ward Holding Corp.)*, 2000 WL 33712307 (Bankr.D.Del. Sept.1, 2000); *Zack v. United States (In re Zack)*, 224 B.R. 601 (E.D.Mich. 1998); *Williams v. United States (In re Williams)*, 209 B.R. 584 (Bankr.D.R.I.1997); *Fyfe v. United States (In re Fyfe)*, 186 B.R. 290 (Bankr.N.D.Ga.1995); *Millsaps v. United States (In re Millsaps)*, 133 B.R. 547, 554 (Bankr.M.D.Fla.), *recommendation approved*, 138 B.R. 87 (M.D.Fla.1991).

5. *Northbrook Partners LLP v. County of Hennepin (In re Northbrook Partners LLP)*, 245 B.R. 104, 117 n. 25 (Bankr.D.Minn.2000); *Smith v. United States (In re Smith)*, 122 B.R. 130, 132 (Bankr.M.D.Fla.1990) (§ 1334(c)(1) does not apply in proceeding that involves federal, rather than state, tax law).

6. *Cody, Inc. v. County of Orange (In re Cody, Inc.)*, 338 F.3d 89, 97, n. 8 (2d Cir.2003), *aff'g in part and dismissing appeal in part from* 281 B.R. 182 (S.D.N.Y.2002); *Metromedia Fiber Network, Inc. v. Various State and Local Taxing Authorities (In re Metromedia Fiber Network, Inc.)*, 299 B.R. 251, 280 (Bankr. S.D.N.Y.2003); *In re Plus Gold, Inc.*, 1994 WL 92415 (Bankr.N.D.Ohio Feb.4, 1994).

tion. *Colorado River Water Conserv. Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *see* 17A MOORE'S FEDERAL PRACTICE § 122.01[1] at 122–7 (3d ed.2004) (hereinafter "MOORE'S"). It is only in limited, exceptional circumstances that federal courts should abstain from ruling on a controversy within their jurisdiction, and in every one it is because of a determination that important policy grounds such as federalism or respect for state processes make it appropriate or necessary that the matter be resolved in a state tribunal. MOORE'S at § 122.01[3]. A fundamental premise of these abstention doctrines is availability of another forum to which, out of deference, a federal court yields its otherwise valid jurisdiction. *Id.* at § 122.01[1], [3], at 122–7, 122–10. If there is no other available forum, there is nothing to defer to, there is no basis for abstention, and the federal court must exercise its jurisdiction.

The Supreme Court in 1940 established the principles for abstention in bankruptcy cases under the Bankruptcy Act of 1898 in *Thompson v. Magnolia Petroleum Co.,* 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940). When Congress overhauled the bankruptcy laws in 1978, the Bankruptcy Reform Act recognized the *Magnolia Petroleum* principles in former 28 U.S.C. § 1471(d). Bankruptcy Reform Act of 1978, § 241(a), Pub.L. No. 95–598, 92 Stat. 2549 (1978), *reprinted in* App. A COLLIER ON BANKRUPTCY, pt. 4(a) (15th ed. rev.2004) (hereinafter "COLLIER"); *see* H.R.Rep. No. 95–595, at 446 (1977), *reprinted in* App. C COLLIER pt. 4(d)(i) (hereinafter "H. Rep. 95–595"); S.Rep. No. 95–989, at 154 (1978), *reprinted in* App. D COLLIER pt. 4(e)(i) (hereinafter "S. Rep. 95–989"). *See generally In re Super Van, Inc.,* 161 B.R. 184, 187 (Bankr. W.D.Tex.1993); Susan Block–Lieb, *Permissive Bankruptcy Abstention,* 76 WASH. U.L.Q. 781, 796–818 (1998) (hereinafter *"Permissive Bankruptcy Abstention"*). In 1984, in response to *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), Congress rewrote the bankruptcy jurisdiction provisions to remedy constitutional problems. 1 COLLIER ¶¶ 2.01, 3.01. With regard to abstention, current § 1334(c), enacted as part of this process, replaced former § 1471(d).

*Magnolia Petroleum* and the legislative histories of both former § 1471(d) and current § 1334(c)(1) ground permissive abstention in the principle that, under proper circumstances, it is more appropriate to have a state court hear certain matters of state law. In *Magnolia Petroleum,* the Supreme Court stated that the bankruptcy court's proper exercise of its control over the bankruptcy estate "may, where the interests of the estate and the parties will best be served, lead the bankruptcy court to consent to submission to state courts of particular controversies involving unsettled questions of state property law and arising in the course of bankruptcy administration." 309 U.S. at 483, 60 S.Ct. 628. The legislative history of former § 1471(d) states:

> [The statute] recognizes the exigencies that arise in such cases as [*Magnolia Petroleum*] in which it is more appropriate to have a State court hear a particular matter of State law. The bankruptcy courts will not abstain, however, when no other court, Federal, State, or local, has jurisdiction over the proceeding in question.

H. Rep. 95–595, at 446; *accord,* S. Rep. 95–989, at 154, U.S.Code Cong. & Admin.News 1978, pp. 5963, 6401, 5787, 5940. The permissive abstention provisions of former § 1471(d) were largely restated in the 1984 amendments that enacted § 1334(c)(1), resulting in limited discussion of permissive abstention, but the fundamental premise that abstention is based on

the availability of a nonbankruptcy forum is readily apparent. S.Rep. No. 98–55, at 17–18 (1983); *Permissive Bankruptcy Abstention, supra,* at 808–14; *see Coker v. Pan American World Airways, Inc. (In re Pan American Corp.),* 950 F.2d 839, 845 (2d Cir.1991).

▇▇▇▇ The Court concludes that § 1334(c)(1) does not permit preclusive abstention, that is, abstention that denies relief because it is not available elsewhere. Congress could not have intended in § 1334(c)(1) to grant bankruptcy courts the broad power to deny a bankruptcy remedy on the basis of "discretion," particularly in view of the fact that a § 1334(c)(1) abstention decision cannot be appealed to the court of appeals under § 1334(d). Thus, abstention under § 1334(c)(1), like abstention under other abstention doctrines, unconditionally requires the availability of another forum. If a bankruptcy court has jurisdiction over a dispute and there is no other tribunal to resolve it, the court is obligated to hear the dispute. Because there is no alternative forum here, the Court cannot abstain under § 1334(c)(1). *E.g., United States v. Sterling Consulting Corp. (In re Indian Motocycle Co.),* 261 B.R. 800, 807 (1st Cir. BAP 2001); *see Dayton Title Agency, Inc. v. Wright (In re Dayton Title Agency, Inc.),* 304 B.R. 323 (Bankr.S.D.Ohio 2004); *Sonnyco Coal, Inc. v. Bartley (In re Sonnyco Coal, Inc.),* 131 B.R. 799 (S.D.Ohio 1990). *Contra, Cody, Inc. v. County of Orange (In re Cody, Inc.),* 281 B.R. 182

(S.D.N.Y.2002), *aff'd in part and appeal dismissed in part,* 338 F.3d 89 (2d Cir. 2003); *Millsaps v. United States (In re Millsaps),* 133 B.R. 547, 554–56 (Bankr. M.D.Fla.), *recommendation approved,* 138 B.R. 87 (M.D.Fla.1991).

## IV. § 505(a) DISCRETION

The material words of § 505(a) for present purposes are "the court *may* determine" the amount or legality of any tax, subject to certain exceptions and conditions. The courts have assumed that the word "may" means that the statute grants discretionary authority to the bankruptcy court to decide a tax issue within its scope and that it therefore permits a bankruptcy court to decline to exercise the jurisdiction it confers based on consideration of six factors (discussed below) they have developed to guide the exercise of that discretion. *E.g.,* cases cited *supra* notes 2, 3, and 5. In most of the cases, especially the early ones that first decided that § 505(a) permitted abstention, the debtor could seek relief elsewhere. Because abstention in such non-preclusive cases could be justified under the permissive abstention principles of § 1334(c)(1), those courts did not have to ask or answer the question of whether "may" in § 505(a) permits abstention when § 1334(c)(1) does not.

The courts in later cases that abstained in a preclusive situation do not ask the question either.[7] Applying the same rea-

7. *New Haven Projects LLC v. City of New Haven (In re New Haven Projects LLC),* 225 F.3d 283, 287–88 (2d Cir.2000); *Cody, Inc. v. County of Orange (In re Cody, Inc.),* 281 B.R. 182 (S.D.N.Y.2002) (also abstaining under § 1334(c)(1)), *aff'd in part and appeal dismissed in part,* 338 F.3d 89 (2d Cir.2003); *Eddyville Corp. v. Ulster County (In re Eddyville Corp.),* 1998 WL 106143 (S.D.N.Y. Mar.10, 1998); *Cunningham v. Georgia Dept. of Revenue (In re Cunningham),* 278 B.R. 290

(Bankr.M.D.Ga.2002); *Northbrook Partners LLP v. County of Hennepin (In re Northbrook Partners LLP),* 245 B.R. 104 (Bankr.D.Minn. 2000); *In re Onondaga Plaza Maintenance Co., Inc.,* 206 B.R. 653 (Bankr.N.D.N.Y. 1997). *See also Building Technologies Corp. v. City of Hannibal (In re Building Technologies Corp.),* 167 B.R. 853 (Bankr.S.D.Ohio 1994) (court abstains despite uncertainty as to availability of alternative forum); *Millsaps v. United States (In re Millsaps),* 133 B.R.

soning as the non-preclusive abstention cases, these courts conclude that jurisdiction is discretionary under § 505(a), recite six factors that are to govern exercise of that discretion, and then announce that abstention under them is appropriate. Generally, the controlling reason is that, when § 505(a) review benefits only the debtor (or, sometimes, its insiders), such review does not serve the purpose of the statute and should not be undertaken.

■ The Court examines the question below and concludes that § 505(a) does not permit abstention other than under § 1334(c)(1), *i.e.*, § 505(a) does not authorize preclusive abstention. The Court's analysis begins with discussion of the preclusive abstention cases. The Court then explains two reasons for its conclusion. The first is based on the facts that § 505(a) contains no express authorization for discretionary abstention in a preclusive situation and that various indicia of Congressional intent demonstrate that Congress did not intend to permit abstention other than under § 1334(c)(1). The second is based on the fact that the courts in preclusive abstention situations have not exercised and cannot exercise discretion under § 505(a) in any principled way but, rather, have developed and applied an outcome-determinative rule of substantive law. Because there is no discretion to be exercised, the statute is not properly interpreted as authorizing it.

547, 554–56 (Bankr.M.D.Fla.), *recommendation approved,* 138 B.R. 87 (M.D.Fla.1991) (abstaining under § 1334(c)(1)). Two other cases reach this result as an alternative holding to a determination that § 505(a) review is not available because there had been a contest or adjudication, *El Tropicano, Inc. v. Garza (In re El Tropicano, Inc.),* 128 B.R. 153 (Bankr.W.D.Tex.1991), or a determination that § 505(a) does not permit a refund that is not available under state law. *In re St. John's Nursing Home, Inc.,* 154 B.R. 117

## A. The Preclusive Abstention Cases

In *New Haven Projects LLC v. City of New Haven (In re New Haven Projects LLC),* 225 F.3d 283 (2d Cir.2000), the Second Circuit upheld the bankruptcy court's abstention from reviewing an ad valorem tax claim that the chapter 11 debtor could not challenge under state law. Its analysis and holding are typical of the preclusive abstention cases cited above in footnote 7.

*New Haven* began by determining that § 505(a) permits discretionary exercise of jurisdiction. The court advanced three bases for this conclusion.

First, the court noted the statute's language that the bankruptcy court "may determine the amount or legality of any tax" and determined that "may" denotes a grant of authority that is permissive. The court found support for its conclusion in the fact that Congress used "shall" in other provisions of the Bankruptcy Code to denote mandatory requirements. The court compared "may" in § 505(a)(1) with "shall" in § 503(b), which states, "there shall be allowed administrative expenses." *Id.* at 287–88.

Second, the *New Haven* court referred to legislative history dealing with § 505, *id.* at 288, that states in pertinent part:

[Subsection (a) is] derived, with only stylistic changes, from section 2a(2A) of the Bankruptcy Act .... As under current Bankruptcy Act § 2a(2A), *Arkansas Corporation Commissioner* [sic] *v.*

(Bankr.D.Mass.1993), *aff'd,* 169 B.R. 795 (D.Mass.1994). A third court abstained where an individual debtor sought a determination of federal income taxes based on an amendment to her return to claim income averaging that had not been timely filed. It is unclear whether the court could have decided that § 505(a)(2)(B) precluded relief because the debtor sought a refund that was unavailable under federal tax law, as the Internal Revenue Service contended. *In re Swan,* 152 B.R. 28 (Bankr.W.D.N.Y.1992).

*Thompson,* 313 U.S. 132, 61 S.Ct. 888, 85 L.Ed. 1244 (1941), remains good law to permit abstention where uniformity of assessment is of significant importance. H. Rep. 95–595, at 356; S. Rep. 95–989, at 67, U.S.Code Cong. & Admin.News 1978, pp. 5963, 6312, 5787, 5853. Based on this legislative history, the debtor in *New Haven* argued that abstention was proper only if deciding a tax dispute implicated uniformity of assessment. The court ruled, however, that this statement "simply clarifies" that § 505 permits discretionary abstention where uniformity of assessment is of significant importance but does not restrict abstention to that reason. 225 F.3d at 288. The court did not analyze abstention under § 2a(2A) or the cited case.

Finally, the court found that "an overwhelming number of courts have observed that § 505(a)(1) vests the bankruptcy courts with general discretionary authority to redetermine a debtor's tax liability." *Id.* The court cited, but did not discuss, several bankruptcy and district court decisions.

*New Haven* then determined that the exercise of discretion "must be informed by the purpose underlying the statute." 225 F.3d at 288. The court noted two purposes. One is to protect creditors "from the dissipation of an estate's assets in the event that the debtor failed to contest the legality and amount of taxes assessed against it." *Id.* (citations and internal quotations omitted). The other is to "afford an alternative forum for proceedings that might otherwise delay the orderly administration of the case and distribution to the debtor's creditors." *Id.*

*New Haven* then noted with approval six factors that most other courts have considered: "(1) the complexity of the tax issue; (2) the need to administer the bankruptcy estate in an expeditious fashion; (3) the burden on the bankruptcy court's docket; (4) the length of time necessary to conduct the hearing and to render a decision thereafter; (5) the asset and liability structure of the debtor; and (6) the potential prejudice to the debtor, the taxing authority, and creditors." 225 F.3d at 289. Other courts sometimes mention other considerations to take into account, such as the effect that choice of a forum would have on creditor's rights and realizations from the bankruptcy case and the relative weight of promoting the debtor's "fresh start." *E.g., Northbrook Partners LLP v. County of Hennepin (In re Northbrook Partners LLP),* 245 B.R. 104, 118 (Bankr.D.Minn. 2000). These considerations for present purposes are fairly subsumed within the "prejudice" factor.

The *New Haven* court then reviewed the bankruptcy court's "similar analysis" of these factors. Agreeing with the bankruptcy court that some factors favored the exercise of jurisdiction, such as that the tax issues were not complex and that their redetermination would not be overly time-consuming or burdensome, the court focused on two principal reasons that the bankruptcy court had relied on in electing to abstain. The first was that the amount of unsecured debt, $8,000, was *de minimis.* The second was that review of the taxes would benefit only the debtor and its affiliates and insiders, who effectively controlled the secured creditor in the case, and would be an "inappropriate windfall" to them at great expense to the taxing authority and purchaser of the tax claims. 225 F.3d at 289. The court quoted the bankruptcy court's ruling, *id.*:

> The motion not only does not advance ... what the court views to be the primary purpose underlying the enactment of Section 505, it serves no purpose contemplated by Section 505 and, indeed, in this Court's view, defies the spirit of that statute and visits undue prejudice on the responding parties.

The *New Haven* court agreed that the insider secured creditor was the only party who would likely benefit from § 505 review and that reassessment would "threaten to prejudice" the taxing authority and purchasers as "outside creditors." *Id.* at 290. The court then stated, *id.* (citation omitted):

> Section 505 was enacted to protect creditors from the prejudice caused by an ailing debtor's failure to contest tax assessments. It was not enacted to afford debtors a second bite at the apple at the expense of outside creditors.

The court thus affirmed the abstention "[b]ecause the exercise of Section 505 review in this case would frustrate the purpose of the statute." *Id.*

Because relief is not available elsewhere, *New Haven* and other courts that abstain in a preclusive situation effectively deny § 505(a) relief, justifying the result as an exercise of discretion to decline jurisdiction. Courts that have declined to abstain under § 505(a) in a preclusive situation similarly resolve the issue in terms of discretion.[8] In those cases, however, the courts have found that unsecured creditors will benefit from reduction of taxes; they justify the decision not to abstain on the conclusion that prejudice to creditors outweighs prejudice to the tax claimant such that abstention would not serve the purpose of § 505(a). Thus, the courts in preclusive situations justify the decision to abstain or not in terms of discretion, reciting and considering the six factor test as guiding that discretion. But the controlling factor is whether granting relief will serve § 505(a)'s purpose, which these cases view as benefit to parties other than the debtor and its insiders.[9]

## B. The Court's Analysis

The decisions to abstain in *New Haven* and the other preclusive abstention cases

---

**8.** *E.g., In re AWB Assocs., G.P.*, 144 B.R. 270 (Bankr.E.D.Pa.1992); *In re 499 W. Warren Street Assocs., L.P.*, 143 B.R. 326 (Bankr. N.D.N.Y.1992); *In re East Coast Brokers & Packers, Inc.*, 142 B.R. 499 (Bankr.M.D.Fla. 1992).

**9.** The question of benefit to the debtor arises in a different context in "no asset" cases in which an individual debtor seeks a determination of the amount of nondischargeable tax liability in the bankruptcy court rather than in another court, if available. When there are no assets in the case to make a distribution to unsecured creditors and, therefore, the result will only benefit the debtor, most courts abstain. *E.g., Cunningham v. Georgia Dept. of Revenue (In re Cunningham)*, 278 B.R. 290 (Bankr.M.D.Ga.2002); *Gossman v. United States (In re Gossman)*, 206 B.R. 264 (Bankr. N.D.Ga.1997); *Shapiro v. United States (In re Shapiro)*, 188 B.R. 140 (Bankr.E.D.Pa.1995); *Wood v. United States (In re Wood)*, 1994 WL 759753 (Bankr.N.D.Ga. Nov.21, 1994); *Starnes v. United States (In re Starnes)*, 159 B.R. 748 (Bankr.W.D.N.C.1993); *Queen v. United States (In re Queen)*, 148 B.R. 256 (S.D.W.Va.1992), *aff'd* 16 F.3d 411 (4th Cir. 1994) (table); *Millsaps v. United States (In re Millsaps)*, 133 B.R. 547 (Bankr.M.D.Fla.), *recommendation approved*, 138 B.R. 87 (M.D.Fla. 1991); *In re Diez*, 45 B.R. 137 (Bankr. S.D.Fla.1984). A number of courts, however, have concluded that a debtor may invoke § 505(a) and that abstention may not be proper even if the determination affects no one else in the case. *E.g., Internal Revenue Service v. Luongo (In re Luongo)*, 259 F.3d 323, 330–33 (5th Cir.2001); *Miller v. Internal Revenue Service (In re Miller)*, 300 B.R. 422 (Bankr.N.D.Ohio 2003); *Fyfe v. United States (In re Fyfe)*, 186 B.R. 290 (Bankr.N.D.Ga. 1995); *In re Huddleston*, 1994 WL 764193, at *6–7 (Bankr.W.D.La.1994); *Anderson v. United States (In re Anderson)*, 171 B.R. 549, 551 (Bankr.W.D.Va.1994); *Smith v. United States (In re Smith)*, 122 B.R. 130, 133–34 (Bankr. M.D.Fla.1990). Viewed in terms of "statutory purpose" analysis, the latter cases effectively recognize that determination of an individual debtor's nondischargeable taxes serves a statutory purpose because it furthers the debtor's "fresh start," one of the objectives of the Bankruptcy Code.

involve two steps. The first is a determination that § 505(a) authorizes discretionary abstention. The Court explains below the reasons that mandate the conclusion that the statute does not permit abstention other than permissive abstention under § 1334(c)(1).

The second step is a justification of the abstention decision as a discretionary exercise of jurisdiction based on consideration of six factors. In actuality, however, there is no discretion that courts can legitimately exercise in deciding whether to abstain in a preclusive situation. Rather, their results are based on application of an outcome-determinative legal rule, to wit: § 505(a) authorizes relief only if there is a statutory purpose in the circumstances presented. Thus, the determinations are not, and cannot be, discretionary. It follows, then, that if there is no discretion to be exercised, it makes no sense to interpret the statute as permitting it. If the rule these courts state is a correct interpretation of the statute (which the Court does not decide here), it may provide grounds for denial of § 505(a) relief on the merits, but it is not a proper basis for declining to exercise jurisdiction.

### 1. Interpretation of § 505(a) in Preclusive Abstention Situation.

■ Interpretation of a statute begins with its language. The language of § 505(a) is ambiguous because the word "may" has different meanings. Dictionary definitions of the word indicate that it is synonymous with "shall", "must", and "can." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1396 (Merriam–Webster 1993); BLACK'S LAW DICTIONARY 993 (7th ed.1999); BLACK'S LAW DICTIONARY 1171 (3d ed. 1933) ("Regardless of the instrument, however, whether constitution, statute, deed, contract or whatnot, courts not infrequently construe 'may' as 'shall' or 'must'

to the end that justice may not be the slave of grammar."). In the present context, "may" clearly is used in its permissive sense of granting authority, meaning that the statute permits the court to determine tax matters, but the word alone does not answer the question of whether it also means that the court may decline to exercise its authority.

As discussed above, the Second Circuit in *New Haven Projects LLC v. City of New Haven (In re New Haven Projects LLC),* 225 F.3d 283, 287–88 (2d Cir.2000), determined that "may" demonstrated Congressional intent that § 505(a) review be permissive because Congress used "shall" in other provisions of the Bankruptcy Code to express a mandatory requirement. The only example the court provided is § 503(b), which states, "there shall be allowed administrative expenses." This reasoning is unpersuasive for several reasons.

First, this reasoning necessarily implies that Congress had to use "shall" instead of "may" to avoid a construction that it intended to permit discretionary abstention in § 505(a). But the words "the court shall determine" could give rise to interpretations that the court had to determine tax claims whether or not contested and that it could not abstain under § 1334(c)(1). These construction problems do not exist with regard to § 503(b), which comes into play only after a request for an administrative expense has been made under § 503(a), and which, by using the passive voice, does not refer to the "court" as determining an administrative claim and thereby does not exclude abstention under § 1334(c)(1).

At the same time, the Bankruptcy Code provides in ¶¶ 547, 548, and 549 that a trustee "may" avoid certain preferential, fraudulent, or unauthorized postpetition transfers. These sections give the trustee discretion as to whether to invoke them,

but certainly the bankruptcy court has no discretion to decline to hear an avoidance action on discretionary grounds. "May" in § 505(a) is easily susceptible to an interpretation that it has the same purpose and effect: The trustee is not required to challenge a tax, but if she does so, the court must hear it. *Cf. In re Super Van, Inc.*, 161 B.R. 184, 189 (Bankr.W.D.Tex.1993).

Focusing on word choice, then, is insufficient. Rather, it is necessary to consider § 505(a) in the context of the comprehensive legislation of which it is a part and the prior law from which its language is derived.

Section 64a(4) of the Bankruptcy Act, as enacted in 1898 and amended in 1938, gave priority to the payment of certain "taxes legally due and owing" by the debtor over unsecured creditors and provided, "in case any question arises as to the amount or legality of any taxes, such question shall be heard and determined by the court." 52 Stat. 851, 874 (June 22, 1938), *amending* 30 Stat. 544, 563 (July 1, 1898); *see* 3A COLLIER ON BANKRUPTCY ¶ 64.407[1] at 2204 (14th ed.1975) (hereinafter "COLLIER (14th ed.)").[10] Until the Supreme Court's decision in *Arkansas Corporation Commission v. Thompson*, 313 U.S. 132, 61 S.Ct. 888, 85 L.Ed. 1244 (1941), discussed below, most courts decided that this provision gave the bankruptcy courts full power to determine the validity and amount of tax claims in bankruptcy cases, and some courts viewed this authority as a duty to insure that a tax had not been improperly assessed. 3A COLLIER (14th ed.) ¶ 64.407[2] at 2205–08. Most courts thus construed the bankruptcy court's authority under this statute as extending to the redetermination of taxes that had been assessed or determined by a state tax authority, regardless of whether the debtor

would be precluded from challenging the tax outside of bankruptcy; redetermination of taxes was precluded only if the issue had been decided by a court such that the determination was *res judicata*. 3A COLLIER (14th ed.) ¶ 64.407[2] at 2210–12.

In 1941, the Supreme Court decided *Arkansas Corporation Commission v. Thompson*, 313 U.S. 132, 61 S.Ct. 888, 85 L.Ed. 1244 (1941). In that case, the railroad reorganization trustee had contested post-bankruptcy ad valorem taxes at a hearing before the state tax commission but did not seek judicial review in the Arkansas courts. After the time for appeal had expired, the trustee filed a proceeding in the bankruptcy court for a determination of the taxes under § 64a(4). The Supreme Court held that the commission was a quasi-judicial agency and that the bankruptcy court could not revisit its determination. In doing so, the Court stated that Congress did not intend in § 64a(4) "to impose upon the bankruptcy court the unusual power and delicate duty of trying out afresh the facts found by the state with relation to the value of property" and that "there is nothing in the history of bankruptcy or reorganization legislation to support the theory that Congress intended to set the federal courts up as super-assessment tribunals over state taxing agencies." 313 U.S. at 144–45, 61 S.Ct. 888. The Court added, *id.*:

The express legislative purpose of Arkansas to move towards a more nearly uniform and fairly distributed tax burden through relying on supervision by a single agency could be in large part frustrated by the construction of the Bankruptcy Act for which the trustee here contends. Section 64(a), thus con-

---

**10.** The prior law discussed herein and in COLLIER (14th ed.) is also covered in the revised 15th edition of the treatise. 4 COLLIER ON BANKRUPTCY ¶ 505.LH (15th ed. rev.2004).

strued, would tend to obstruct, and not to facilitate, the enforcement of state tax laws. Nothing in the language of the Act requires such a construction. And the policy of revising and redetermining state tax valuations contended for by the trustee would be a complete reversal of our historic national policy of federal non-interference with the taxing power of states.

Notwithstanding these statements, the case was generally viewed as standing only for the proposition that the statute limited redetermination of taxes that had been decided by a quasi-judicial body as well as by a court. *See* 3A Collier (14th ed.) ¶ 64.407[2] at 2229–33; Note, *Jurisdiction over State Tax Claims in Bankruptcy Liquidation and Reorganization*, 55 Harv. L.Rev. 1343, 1351 n. 49 (1942). Thus, most courts continued to permit reevaluation where the assessment was grossly excessive and where the issue had not been determined by a quasi-judicial body beyond a tax assessor or similar official. 3A Collier (14th ed.) ¶ 64.407[2] at 2232–33.

The tax determination provisions in § 64a(4) were removed in 1966 and replaced by a new section inserted as subsection (2A) in the jurisdictional provisions of section 2a of the Bankruptcy Act. 80 Stat. 270 (July 5, 1966). Section 2a(2A) (the direct predecessor to § 505(a)) granted jurisdiction to the bankruptcy courts to—

Hear and determine, or cause to be heard and determined, any question arising as to the amount or legality of any unpaid tax, whether or not previously assessed, which has not prior to bankruptcy been contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction, and in respect to any tax, whether or not paid, when any such question has been contested and adjudicated by a judicial or administrative tribunal of competent jurisdiction and the time for appeal or review has not expired, to authorize the receiver or the trustee to prosecute such appeal or review.

The new statute made it clear that the only two limitations on the court's jurisdiction to redetermine a tax were, first, it must not have been paid, and, second, it must not have been contested and adjudicated prior to bankruptcy. It also resolved a question that *Arkansas Commission* had not answered—whether tax claims could be reviewed in reorganization cases—by including it in the jurisdictional provisions so that it clearly did apply. 3A Collier (14th ed.) ¶ 64.407[3] at 2234. Thus, § 2a(2A) confirmed the prevailing view that a bankruptcy court could determine a tax regardless of whether the debtor had complied with state law procedures governing challenges to the tax. *E.g., City of Amarillo v. Eakens*, 399 F.2d 541, 543 (5th Cir.1968); 3A Collier (14th ed.) & 64.407[3] at 2234–35. By restricting redetermination of a tax only if a contest and adjudication occurred prior to bankruptcy, the new statute legislatively overruled the holding of *Arkansas Commission* that a bankruptcy court could not review a post-bankruptcy determination. Although enactment of § 2a(2A) codified another aspect of its holding—that the bankruptcy court could not redetermine a tax contested before an administrative body, the statute nevertheless rejected the policy considerations about which *Arkansas Commission* was concerned—that federal bankruptcy law should not interfere with state tax collection. *See In re Super Van, Inc.*, 161 B.R. 184, 190 (Bankr. W.D.Tex.1993).

The Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 92 Stat. 2549 (1978), *reprinted in* App. A Collier, pt. 4(a), comprehensively revised the bankruptcy laws. Among other things, the new legislation

separated substantive from jurisdictional provisions. Thus, Title I of the Bankruptcy Reform Act enacted the substantive law of bankruptcy as the Bankruptcy Code in Title 11 of the United States Code, and Title II vested jurisdiction of all matters related to bankruptcy cases in the bankruptcy court with broad jurisdiction through amendments to Title 28.

One of Congress' principal objectives was to eliminate jurisdictional disputes that it thought had plagued the administration of bankruptcy cases under the Bankruptcy Act. *E.g., Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 87 n. 40, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) ("[O]ne of the express purposes of the Act was to ensure adjudication of all claims in a single forum and to avoid the delay and expense of jurisdictional disputes."); S.Rep. No. 95–1106 at 4 (1978), *reprinted in* App. D COLLIER pt. 4(e)(ii); H. Rep. 95–595, at 43–49; S. Rep. 95–989, at 17–18; 1 COLLIER ¶ ¶ 2.01[2], 3.01[2]; 1 NORTON BANKRUPTCY LAW AND PRACTICE 2d § 4:13 (1997). As shown above, the jurisdictional provisions expressly dealt with abstention and recognized bankruptcy abstention principles exemplified by *Thompson v. Magnolia Petroleum Co.,* 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940), discussed in Part III above. H. Rep. 95–595, at 51; S. Rep. 95–989, at 154.

The provisions of § 2a(2A) relating to determination of tax claims were revised and placed in § 505 as part of the substantive law contained in the Bankruptcy Code. Section 505 is in a subchapter titled "Creditors and Claims," which is part of Chapter 5 titled "Creditors, the Debtor and the Estate." Section 505 is thus nestled with statutory provisions relating to the filing of proofs of claim (§ 501), their allowance (§ 502), their status as secured or unsecured (§ 506), and their priority (§ 507).

The derivation of § 505(a) from former § 2a(2A) is clear from § 505(a)'s incorporation of key words and phrases of § 2a(2A) and its predecessors. Thus, "amount or legality of any tax" has been in bankruptcy law since 1898 and remained in § 2a(2A); the phrases "whether or not previously assessed" and "contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction" both appeared in § 2a(2A), essentially codifying rulings under its predecessor statute.

Interpreted in light of prior law and in the context of the legislation of which it is a part, § 505(a) does not permit abstention beyond § 1334(c)(1). As an initial matter, the facts that the legislation separated substantive from jurisdictional provisions and that it grouped § 505(a) with other provisions dealing with the filing, allowance, nature, and priority of claims evidence Congressional intent that § 505(a) provide substantive rules for determination of tax claims as part of the claims allowance provisions of the Bankruptcy Code and that the jurisdictional statutes govern questions of jurisdiction, including abstention. In accordance with this statutory dichotomy, § 505(a) has nothing to say about jurisdiction or abstention, both covered elsewhere in Title 28. Thus, § 1334(c)(1), not § 505(a)(1), governs permissive abstention. This interpretation is supported by the fact that Congress expressly considered and enacted significant changes in the nature and scope of jurisdiction of the bankruptcy courts and specifically dealt with abstention as part of the jurisdictional grant, as discussed in Part III above. The specific provision for abstention in the jurisdictional provisions of the legislation belies a Congressional intent to insert a different jurisdictional concept of abstention in § 505(a) solely by use of the word "may."

This conclusion is consistent with § 505(a)'s derivation from § 2a(2A) of the Bankruptcy Act that, as just shown, rejected the policy concerns expressed by the Supreme Court in *Arkansas Commission* about bankruptcy interference with state tax collection matters. Section 505(a)'s use of virtually identical words does not indicate any intent to limit application of the statute or to introduce discretionary abstention. To the contrary, such usage shows an intent to adopt the law under § 2a(2A) and to continue to provide the remedy of review of tax claims as part of the claims allowance process, notwithstanding state tax procedures. Discretion with regard to hearing these matters apparently was not a concept that accompanied application of § 2a(2A) or its predecessors. These circumstances do not indicate that use of "may" creates a new rule of abstention.

That Congress did not intend to confer discretionary jurisdiction in § 505(a) beyond permissive abstention under § 1334(c)(1) also follows from consideration of § 305(a) of the Bankruptcy Code. Section 305(a), titled "Abstention," permits a bankruptcy court to dismiss, or to suspend all proceedings in, a *case* under described conditions. (It does not apply to a single *proceeding* like this adversary proceeding.) The inclusion of § 305(a) in the Bankruptcy Code says two things about legislative intent in § 505(a). First, it shows that Congress knew how to provide for abstention. Second, it shows that, when Congress did so, it specified the standards to govern that determination. This is a persuasive indication that, if Congress had intended § 505(a) to permit discretionary exercise of jurisdiction, it would have expressly so provided and would have set forth standards to govern that discretion.

Finally, a conclusion that "may" in § 505(a) permits preclusive abstention would necessarily impute to Congress an intent to alter established principles of federal jurisdiction that require federal courts to exercise jurisdiction that is granted and that do not permit a court to abstain if no other forum is available. Surely, Congress would not make such a sweeping change without, at the least, some express indication to that effect. In any event, it did not mean to do so by using "may" instead of "shall." *See Permissive Bankruptcy Abstention, supra,* at 835–36 ("When Congress wants to grant to federal courts broad and expansive statutory discretion to decline jurisdiction, it does so with unambiguous language.").

■ Taking all of the foregoing into account, the Court concludes that "may" in § 505(a) is used in the sense of stating authorization and that it is discretionary only to the extent that § 505(a) does not create a requirement to exercise jurisdiction that overrides the bankruptcy court's ability to abstain under § 1334(c)(1). A reading that § 505(a) establishes a new or different standard for abstention does not make sense in view of (1) the absence of express language doing so and (2) the following considerations that show an intent to do so should not be implied: its placement in the Bankruptcy Code among one of several substantive provisions governing claims allowance; the structure of the legislation that deals with jurisdictional issues, including abstention, separately in Title 28, indicating that those statutes govern such questions; the prior law on which § 505(a) is based that rejected any concern for bankruptcy interference with state tax collection; and the specific inclusion in the Bankruptcy Code of § 305(a)'s provisions for abstention from a bankruptcy case and *all* proceedings. Given all of this evidence of Congressional intent and the absence of

any express language granting discretion to abstain, the Court cannot conclude, from the use of the ambiguous word "may," that § 505(a) authorizes discretionary abstention other than what § 1334(c)(1) permits.

In reaching the conclusion that § 505(a) authorizes abstention, the court in *New Haven Projects LLC v. City of New Haven (In re New Haven Projects LLC)*, 225 F.3d 283 (2d Cir.2000), referred to part of the legislative history of § 505(a) and noted that "an overwhelming number" of courts had observed that the statute vests bankruptcy courts with discretionary authority to redetermine tax claims. *Id.* at 287–88. Many of the § 505(a) abstention cases do not deal with preclusive abstention, and these courts properly could have abstained under § 1334(c)(1); of those that deal with preclusive abstention, none considered the statutory analysis set forth above or the problems with their approach discussed below. Thus, these cases do not persuade the Court to alter its conclusion.

The House and Senate committee reports commenting on § 505(a) to which *New Haven* refers state in pertinent part:

> [Subsection (a) is] derived, with only stylistic changes, from section 2a(2A) of the Bankruptcy Act .... As under current Bankruptcy Act § 2a(2A), *Arkansas Corporation Commissioner* [sic] *v. Thompson*, 313 U.S. 132, 61 S.Ct. 888, 85 L.Ed. 1244 (1941), remains good law to permit abstention where uniformity of assessment is of significant importance.

H. Rep. 95–595, at 356; S. Rep. 95–989, at 67, U.S.Code Cong. & Admin.News 1978, pp. 5963, 6312, 5787, 5853.

This excerpt of legislative history is quite curious when examined in the light of prior case law, the holding of *Arkansas Corporation Commission v. Thompson*, 313 U.S. 132, 61 S.Ct. 888, 85 L.Ed. 1244 (1941), and the history of § 2a(2A) discussed above. First, it ignores the fact that § 2a(2A) effectively overruled the *Arkansas Commission's* result that a post-bankruptcy tax determination could not be challenged in the bankruptcy court. More to the point, *Arkansas Commission* said nothing about abstention. Its holding is that § 64a(4), the predecessor to § 2a(2A), did not authorize the bankruptcy court to adjudicate a tax that had been determined by a quasi-judicial agency after a hearing in which the trustee participated. Section 2a(2A) codified part of this holding by prohibiting review of a tax "contested and adjudicated" before an administrative body. The Court did not even intimate that the bankruptcy court should abstain because it held that the bankruptcy court could not redetermine the tax. Furthermore, although *Arkansas Commission* mentioned that bankruptcy court review in that case would frustrate state policy of uniformity of assessment, the Court's concern about bankruptcy interference with state tax collection is not so limited. Beyond all that, Congress by enacting § 2a(2A) at least implicitly rejected any concern about bankruptcy law interference with state tax collection by making it very clear that § 2a(2A) authorized redetermination of a tax "whether or not assessed" and by inserting it as a jurisdictional provision so that its more expansive application in reorganization as well as liquidation cases was also statutorily recognized.

From the statement that § 505(a) is "derived, with only stylistic changes," from § 2a(2A), one would conclude that § 505(a) is based on, is consistent with, and carries forward the basic principles of § 2a(2A). From the statement that *Arkansas Commission* "remains good law to permit abstention where uniformity of assessment is of significant importance," one would conclude that the teaching of that case would inform an analysis of abstention under

§ 505(a). A reading of the case, however, reveals nothing about abstention and demonstrates that the case's policy concern was bankruptcy law interference with state tax collection generally, not just uniformity of assessment. And comparison of § 2a(2A) with its predecessor that the case interpreted shows that the new statute's response to concern about bankruptcy law interference was actually to expand it. Thus, it is a contradiction for the legislative history to advise that § 505(a) is derived from § 2a(2A) while simultaneously reciting that abstention principles from a case that did not develop them and whose policy concerns were disregarded by the statute remain good law. Indeed, the "good law" relating to abstention at the time of enactment of the Bankruptcy Code in 1978 would appear to be the Supreme Court's decision in *Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940), discussed in Part III above and decided the year before *Arkansas Commission*, which the case does not even mention. In short, this confusing, and in some ways erroneous, legislative history does not provide proper guidance for determining preclusive abstention under § 505(a), particularly in view of the other matters considered above.

Even if these statements are accepted at face value as evidencing an intent that abstention is permissible where uniformity of assessment is an important issue, or even that abstention in tax disputes is an important policy, they do not state that § 505(a) itself governs abstention. Under this Court's interpretation of § 505(a), abstention remains permissible if allowed by § 1334(c)(1).

Finally, other statements in the legislative history support the conclusion that abstention should never be preclusive. The House committee report containing the just discussed statements about § 505 says this about abstention in its discussion of the jurisdictional provisions contained in the same legislation: "The bankruptcy courts will not abstain, however, when no other court, Federal, State, or local, has jurisdiction over the proceeding in question." H. Rep. 95–595, at 446, U.S.Code Cong. & Admin.News 1978, pp. 5963, 6401. For reasons already discussed, the Court concludes that this express statement, rather than the questionable reference to *Arkansas Commission*, accurately describes Congressional intent with regard to preclusive abstention under § 505(a).

Based on the foregoing analysis, the Court concludes that § 505(a) does not authorize discretionary abstention beyond abstention for reasons permitted in § 1334(c)(1).

### 2. Impossibility of Discretion in Preclusive Abstention Situation.

Analysis of the second step of the preclusive abstention cases confirms the foregoing interpretation. The preclusive abstention cases *say* they are exercising discretion based on consideration of six factors. Examination of the six factors as considered in a preclusive abstention proceeding, however, demonstrates that the courts are not exercising discretion at all; instead, they are establishing and applying a determinative rule of law, *i.e.*, that § 505(a) does not provide a remedy when a statutory purpose of § 505(a) is not met. It follows that, because there is no discretion that can be exercised, there is no reason to interpret the statute to permit it.

The first four factors are: the complexity of the tax issue, the need to administer the case expeditiously, the burden on the court's docket, and the time required to hear and conclude the matter. If there is no alternative tribunal and abstention results in denial of relief, these factors are

totally irrelevant. Surely, a federal court cannot properly deny an otherwise available remedy because a dispute involves complex issues, because doing so is a burden on its docket, because it will take a long time to do so, or because not doing so (by definition) will help expeditious administration of the case because there is one less issue to deal with. *See In re Super Van, Inc.*, 161 B.R. 184, 193 (Bankr. W.D.Tex.1993). *But see Millsaps v. United States (In re Millsaps)*, 133 B.R. 547, 555–56 (Bankr.M.D.Fla.), *recommendation approved*, 138 B.R. 87 (M.D.Fla.1991). Conversely, it is inappropriate, to say the least, for the only available court to decide that it will rule on an issue because it is easy, because the court has some spare time on its docket, or because it will require only a little time to hear and determine the matter. These factors obviously have nothing to do with deciding whether to abstain in a preclusive situation.

The remaining two factors are the debtor's asset and liability structure and potential prejudice to the debtor, the taxing authority, and creditors. These factors are appropriately discussed together because, as shown below, consideration of the asset and liability structure of the debtor supplies the critical fact to which the courts apply a determinative legal rule, established under the guise of considering the prejudice factor. The determinative legal rule these courts establish is that the § 505(a) remedy is not available if granting relief does not serve a statutory purpose, which in these cases is providing a benefit to creditors other than the debtor and its insiders. The critical fact to be determined is who benefits.

The factor of potential prejudice to the debtor, the taxing authority, and creditors sounds like it is relevant to the exercise of discretion, and, if there is an alternative forum, it is. Consideration of this factor is obviously appropriate to the discretionary choice of forum: In which tribunal is the dispute more properly and fairly lodged? The reasoned analysis and balancing of the needs and positions of the parties, convenience to the parties and witnesses, and the relative fairness of having an issue decided in a state or tax court versus the bankruptcy court can all be taken into account in exercising discretion when an alternative forum exists, as is aptly illustrated by the bankruptcy court's analysis in one of the early § 505(a) abstention cases, *In re Hunt*, 95 B.R. 442 (Bankr.N.D.Tex.1989).

When there is no alternative forum, such considerations are irrelevant. There is no competing forum; there is only one. Because abstention dictates the result, the prejudice is clear and there is nothing to consider except who should win. *Of course* the taxing authority is prejudiced unless the court abstains because § 505(a) abstention is total victory. *Of course* the debtor is prejudiced—fatally—if the court abstains because it then loses. If a true weighing of all factors were going on, the existence of fatal prejudice to the debtor alone would require a court to refuse to abstain, even if all other factors favored abstention. *Cf. Miller v. Internal Revenue Service (In re Miller)*, 300 B.R. 422 (Bankr.N.D.Ohio 2003). Of course, if fatal prejudice alone is sufficient to prevent abstention, then the result is the same as a conclusion that abstention is not appropriate unless there is an alternative forum.

But the courts in the preclusive abstention cases abstain despite the existence of fatal prejudice to the debtor, justifying the result as an exercise of discretion based on a weighing of prejudice. The supposedly discretionary determination that prejudice to the taxing authority outweighs prejudice to the debtor and thus justifies preclusive abstention is actually based on the conclusion that granting relief will not serve a

statutory purpose because creditors will not materially benefit (or because only the debtor and insiders will). *E.g.,* cases cited *supra* note 7. Similarly, in the cases that do not abstain where abstention would be preclusive, the supposedly discretionary determination that prejudice to the debtor outweighs prejudice to the taxing authority is actually based on the conclusion that granting the relief serves a statutory purpose because it is necessary to protect creditors. *E.g.,* cases cited *supra* note 8. Neither situation involves the exercise of discretion in any principled way; rather, the courts are formulating and applying an outcome-determinative rule of substantive law.

The situation under consideration must involve assumptions that the § 505(a) claim is meritorious and there is no remedy elsewhere; if there is no right to relief on the merits or another court can grant relief, abstention is not preclusive because it does not finally resolve the dispute. In a case with these assumptions, there is nothing to balance in terms of prejudice except whether denying the relief would help the taxing authority more than it hurts the debtor or, *vice versa,* whether granting the relief would help the debtor more than it hurts the taxing authority. Because courts do not decide whether to grant or withhold a legal remedy based on how much the decision helps one side or hurts the other, the balancing of prejudice is illusory; it cannot serve as a principled basis for deciding whether to abstain in a preclusive abstention situation.

Stripped of their meaningless reference to four of the six factors and with the other two viewed as providing a principled basis for their results, the cases dealing with abstention in a preclusive situation collectively are determining that § 505(a) relief is available only if a statutory purpose is served, which in these cases is

benefit to creditors (or to someone other than the debtor and insiders). If this is a proper interpretation of the statute, it is not the exercise of discretion but the statement of an outcome-determinative legal rule that governs the merits of disputes. Although the courts justify their results in terms of the discretionary exercise of jurisdiction, there is no discretion that can possibly be exercised in any meaningful sense; there is no principled reason that a court should proceed on discretionary grounds to redetermine a tax claim under § 505(a) in one case and decline to do so in another when the statutory purpose test is not met in either. What other factor could possibly influence the court's legitimate exercise of discretion? Either there is a § 505(a) remedy or there is not under the facts presented to the court. Such a determination is grounded fully and irrevocably in the merits of the controversy and cannot properly be justified on discretionary grounds. That being the case, there is no discretion to exercise and, consequently, there is no basis for concluding that § 505(a) gives the Court discretion to decline jurisdiction in a preclusive situation.

A statute cannot properly be interpreted as requiring or permitting a court to do something that is not possible. It follows that § 505(a) does not authorize a court to exercise discretion to decline jurisdiction when there is no principled discretion to exercise.

By justifying the establishment and application of a determinative legal rule in terms of exercise of discretionary jurisdiction, the courts neither ask nor answer the proper question: Whether § 505(a) establishes such a rule as a matter of interpretation of the statute? This is a question of law, not discretion, and the Court must exercise its jurisdiction to answer it on the merits.

*3. Summary of § 505(a) Abstention Analysis*

In summary, the Court concludes that § 505(a) does not permit the Court to decline to exercise jurisdiction unless permissive abstention is appropriate under 28 U.S.C. § 1334(c)(1). In the first instance, the Court reaches this conclusion based on the absence of express language in § 505(a) providing for abstention and on the indicia of Congressional intent discussed above that such authority cannot properly be found in the use of the ambiguous word, "may." This conclusion is confirmed by the fact that the courts have not exercised and cannot exercise discretion under § 505(a) in any principled way when abstention is preclusive.

### V. CONCLUSION

The Court holds that 28 U.S.C. § 1334(c)(1) does not allow permissive abstention with regard to § 505(a) relief if there is no alternative forum to decide the dispute and that § 505(a) does not permit a bankruptcy court to decline to exercise jurisdiction other than under § 1334(c)(1). To the contrary, the Court is required to exercise jurisdiction to determine the appropriate legal rules and apply them to the facts on the merits, not to effectively determine the merits through an illusory exercise of discretion under the guise of abstention. To the extent that the preclusive abstention cases state reasons that § 505(a) relief should be denied, the denial of abstention does not prevent the raising of those issues and the Court's exercise of its jurisdiction to determine them as matters of substantive bankruptcy law.

For these reasons, the Court denies the motions to abstain.